THE HARTFORD BRIDGE COMPANY *against* GRANGER and others.

On the 4th of *August*, 1818, the defendants agreed with the plaintiffs, an incorporated company, to build for them a bridge across *Connecticut* river, and furnish all the materials for it; and to construct a suitable sliding draw belonging to, and making part of, the bridge, for vessels to pass conveniently, with apparatus for opening and closing it. By an agreement entered into, between the same parties, on the 19th of *December* following, the defendants, after reciting the former agreement, and that they had completed the bridge, except the draw not being done as agreed, stipulated, that they would complete the draw, and the apparatus necessary to render it convenient, and conformable to such former agreement, by the 1st of *March* then next. In an action, brought, by the company, on the latter agreement, to which the defendants pleaded performance, the defendants offered evidence to shew, that both before and after the 19th of *December*, the directors of the company, or some one of them, superintended the work upon the draw, and directed in what manner it should be constructed, and that the defendants conformed to such directions. On the exception of the plaintiffs to that part of the evidence which related to what took place previous to the 19th of *December*, it was held, that such evidence was admissible, as conducing, by a fair and reasonable presumption, to establish the point in issue.

In such action, the declaration of a director of the company, that the company must furnish the iron for the facings of the draw, was held to be inadmissible, as evidence for the defendants, because it *was not pertinent* to the issue, because it was in contravention of the written agreement, and because the directors had no authority to give a construction to that agreement.

An admission, by a party, of a fact, *because it is a fact*, made in a conversation having for its object the settlement of a controversy, is competent evidence; the rule of law excluding offers or concessions with a view to a compromise, being applicable only to such as are made with a design not to admit the existence of a fact, but to buy the party's peace.

This was an action of covenant. The declaration stated, That on the 4th of *August*, 1818, by a certain writing or agreement of that date, signed and sealed, by the president and directors of the *Hartford Bridge* company, on the one part, and the defendants, on the other part, the defendants jointly and severally covenanted, for the consideration therein expressed, among other things, to build for said company a bridge across *Connecticut* river, and furnish all the materials for the same, commencing at the *East* end of *Morgan* street, and extending to *East-Hartford*, on the site of the old bridge; and further, by the same writing, it was covenanted, by the defendants, to build a new pier thirty feet distant from the western abutment, to be founded, built and finished in the manner in said writing mentioned; and further, by the same

writing, it was covenanted, by the defendants, that they would construct a suitable sliding draw between the new pier and the western abutment, belonging to, and making part of, the bridge, for vessels to pass conveniently, with apparatus for opening and closing the said draw. The declaration further stated, that afterwards, on the 19th of *December*, 1818, the defendants, by a certain other writing, of that date, by them well executed and delivered, reciting the agreement above stated, and that they had completed said bridge, except the draw not being so done as agreed, and the covenants then being to be mutually given up, in consideration of the premises, covenanted, that they would complete said draw, and the apparatus necessary to the same, to render it convenient, and suitable to the first agreement, and to conform to the tenor thereof, on or before the first day of *March* then next, under the penalty of 500 dollars for failure.

The defendants pleaded performance ; and on this issue, the cause was tried at *Hartford, February* term, 1821, before *Peters*, J.

The defendants offered evidence to prove, that they had built the frame work of the draw, and completed it, in all respects, except the apparatus for removing and replacing it, before the 19th of *December*, 1818 ; and that before and after that time, and while the defendants were labouring upon the draw, the directors of the company, or some one of them, superintended the work, and gave directions from time to time in what manner the draw should be constructed ; and that the defendants, in all respects, conformed to such directions. The plaintiffs objected to the admission of this evidence, so far as it related to any thing which occurred previous to the 19th of *December*, 1318 ; but the judge admitted it.

The plaintiffs introduced evidence to prove, that the draw was left unfinished, for want of iron ways or facings upon the timbers, by which the draw was supported and removed ; that the draw could not be made convenient, and conformable to the contract, without such iron ways or facings ; and that the defendants had neglected to furnish them. The defendants claimed, that they had made a suitable sliding draw, according to the contract ; and offered evidence to prove, that in a conversation between some of the directors of the company, one of them said to *John Morgan*, Esq. the president, and a director, that such iron ways or facings were necessary to render the draw convenient ; to which *Morgan* replied,

*Hartford*,
July,
1822.

Hartford
Bridge Co.
*v.*
Granger.

Hartford,
July,
1822.

Hartford
Bridge Co.
*v.*
Granger.

that the company must then furnish the iron for that purpose, and then asked the defendants if they would put such ways or facings upon the draw, if the plaintiffs would furnish the necessary iron; and that no iron was furnished, by the defendants, nor were they requested to make such iron ways or facings. To the admission of this evidence the plaintiffs objected; but the judge admitted it.

The plaintiffs also offered to prove, by *James R. Woodbridge*, that long after the first of *March*, 1819, the defendant *Granger* came to his, *Woodbridge's*, store, where he met with *Ward Woodbridge*, one of the directors of the company, who complained to *Granger*, that the draw was not such as it ought to be; to which *Granger* replied, that he knew that it was not such an one as they wanted, and that if the directors would furnish him with a plan, he would conform the draw to such plan, but that he could not make it conformable to the plan of *Eli Whitney*, because it would cost too much. The defendant's counsel, for the purpose of raising an objection to this evidence, asked *James R. Woodbridge*, if such conversation was not had with a view to a compromise; to which the witness answered, that in the conversation, *Granger* asked *Ward Woodbridge* how much money he would accept, and discharge him from doing any thing more to the draw. The defendants then urged their objection to the evidence offered by the plaintiffs; and the judge rejected it.

The plaintiffs contended, and requested the judge to instruct the jury, that the directors had no power to give directions as to the building and finishing of the draw; and that if they, when acting jointly, had such power, no individual of them could give such directions, so as to affect the duty of the defendants in performing their contract, without the consent and co-operation of all, or, at least, of a majority of them. The plaintiffs further requested the judge to instruct the jury, that in making up their verdict, they ought not to consider the evidence as to any such directions, previous to the 19th of *December*, 1818; and that they ought not to take into consideration the declarations of *Morgan* as to the iron ways or facings, or the furnishing of the iron, by the company, to make them. The judge, after stating the case, instructed the jury, that they had only to enquire, whether the defendants had constructed a suitable sliding draw in the bridge for vessels to pass conveniently,

*Hartford,*
*July,*
1822.

*Hartford
Bridge Co.
v.
Granger.*

with apparatus for opening and closing the same, according to their agreement.

The jury returned a verdict for the defendants; and the plaintiffs moved for a new trial, on the ground, that the several decisions of the judge, admitting the evidence of the defendants, and rejecting that offered by the plaintiffs, were erroneous; and on the ground that the judge omitted to give any direction on the points on which the plaintiffs requested him to instruct the jury.

*N. Smith* and *A. Smith*, in support of the motion, contended, 1. That the evidence adduced by the defendants, to shew what they had done previous to the 19th of *December*, 1818, was inadmissible. The agreement entered into, at that time, must be taken as the whole agreement; and the question, on this issue, is, solely, whether the defendants have performed *that* agreement. Propositions and communications between the parties, leading to a contract, the law considers as resolved into it. *Vandervoort* & al. v. *Smith*, 2 *Caines* 155. 161, 2. The agreement of the 19th of *December*, 1818, shews, that the draw was not then done; and this must be decisive.

2. That the declarations of individual directors, as to the finishing of the draw, were inadmissible. First, it does not appear, that these directors had any authority to give directions on this subject. No clause in the act of incorporation, or by-law of the company, or special delegation, is shewn, conferring such authority. They were not agents, in relation to this subject, merely because they were directors. Nor does the fact, that they made the contract, prove that they were agents to give directions. *Hartford Bank* v. *Hart*, 3 *Day* 493---5. *Phil. Ev.* 74. Secondly, if the directors had authority, they could act only as a *board*. The acts and opinions of *John Morgan* alone could not bind the company. *Kupfer* & al. v. *South Parish in Augusta*, 12 *Mass. Rep.* 185. 189. The agreement was, that the defendants should *complete the draw;* and if iron ways were necessary, the plaintiffs have never dispensed with them. Could an individual director dispense with them, and thus controul the agreement?

3. That the testimony of *James R. Woodbridge* as to the admissions of *Granger*, ought to have been received. *Facts*, admitted by a party, may always be proved; but concessions

*Hartford,*
*July,*
*1822.*

*Hartford*
*Bridge Co.*
*v.*
*Granger.*

or offers, made with a view to a compromise, cannot be. *Gregory* v. *Howard,* 3 *Esp. Rep.* 113. *Bul. N. P.* 236. The admission, which the plaintiffs proposed to prove, was simply of the fact, that the draw was not such as it ought to be. No rule of law requires the rejection of this evidence, because the party, in the course of the conversation, enquired for what sum of money he could be discharged.

4. That the plaintiffs were entitled to the benefit of the judge's direction to the jury on the points submitted.

*N. Terry* and *T. S. Williams,* contra, contended, 1. That the evidence adduced by the defendants, of what they had done on the draw previous to the 19th of *December,* 1818, was properly received. The agreement of that date is nothing more than *an extension of time* for the performance of the first agreement, in relation to the draw. By the first agreement, the defendants were bound to construct a *suitable sliding draw,*—for vessels to pass *conveniently,*—with apparatus for opening and closing it. On the 19th of *December,* 1818, they covenanted. that they would complete said draw, and the necessary apparatus, to render it *convenient,* and *to conform to the tenour of the first agreement.* The charge against the defendants, is, that they have not conformed to the first agreement; and the defendants say, that they have conformed to that agreement. Surely, then, proof of what they have done, under that agreement, is within the issue. The case does not purport to state all the evidence : it is sufficient, if that which is stated, conduced to prove the issue.

2. That the evidence, adduced by the defendants, of what the directors did and said in relation to the draw, was properly received. First, the evidence offered related to the acts of the directors as the *agents* of the company ; and it was not excepted to, as being of a different character. Secondly, it is apparent from the evidence itself, that they were agents. They made the contract, and superintended its execution. At any rate, the jury might, from these acts, well presume an authority ; and the court will not invade their province, by declaring it insufficient. Thirdly, the evidence in question, related to the acts of the directors, in their capacity of directors, and not as individuals. They were together. To shew their acts and declarations, it is proper to prove what each, or any one, did or said. Besides,

*Hartford,*
*July,*
1822.

*Hartford*
*Bridge Co.*
*v.*
*Granger.*

what *Morgan* did or said in the presence of all, without the disapprobation of any, is to be taken as the act or declaration of all. Fourthly, if the directors had authority, and acted in pursuance of it, the evidence in question was pertinent to the issue. Suppose *A.* were to contract with *B.* to build for him a convenient house for a tavern; would it not be proof of performance, that *B.* said, it was built in a convenient manner for this purpose?

3. That a new trial ought not to be granted, for the rejection of *James R. Woodbridge's* testimony. First, it related to an offer made with a view to compromise. The sole business of the meeting was to settle a controversy; and when this is the object, the party is to be protected throughout the conversation. Secondly, the testimony was of no importance. It did not shew, that the draw was not made according to the agreement; but merely, that it was not such as *Ward Woodbridge* wanted.

4. That there was no state of facts to raise the questions, on which the plaintiffs prayed the judge to instruct the jury, or to shew that it was his duty to give such direction.

HOSMER, Ch. J. This case presents four questions for determination.

1. To prove that the defendants had built the frame work of the draw, and completed it, in all respects, before the 19th of *December,* 1818, except the apparatus for removing and replacing the same, they offered evidence to shew, that both before and after that period, the directors of the bridge company, or some one of them, superintended the work, and gave directions in what manner the same should be constructed; and that the defendants conformed to such directions. The plaintiffs objected to the proof of any occurrence, before the time specified above; but the evidence was admitted.

No question was made in the court below, as to the *agency* of the directors; nor is the objection raised on that ground; nor has it been contended, that the act of an agent, within the scope of his authority, is not equivalent to the act of the principal. The reverse is incontrovertibly established. (*Vide* the cases cited 1 *Phil. Ev.* 74.) The evidence was not admissible to disprove or impair the agreement made in *December;* nor was it offered for that purpose. The object was to prove performance, which was the point in issue; and the tes-

*Hartford*,
July,
1822.

Hartford
Bridge Co.
*v.*
Granger.

timony, by a fair and reasonable presumption, conduced to establish the matter in question.

2. The judge admitted testimony to prove the declaration of a director of the bridge company, that the company must furnish the iron, to make the iron facings of the draw.

This testimony was manifestly inadmissible, for several reasons. First, it was not directed to the issue, as it had no tendency to prove performance of the contract; but it did tend to furnish a valid excuse for non-performance; a point not before the court. Secondly, it was in direct contravention of the written contract, by which the defendants had obliged themselves to supply the materials. And lastly, the directors had no authority to give a construction to the written agreement.

3. The plaintiffs offered to shew, by *James R. Woodbridge*, the admission of *Granger*, one of the defendants, that the draw was not complete; and the court overruled the testimony, as being conversation with a view to a compromise.

The proposed evidence was material to the issue; and when the admission was made, there had been no conversation with the view above-mentioned. But if the contrary were true, it would not authorize the rejection of the offered testimony. The law on this subject has often been misconceived; and it is time that it should be firmly established. It is never the intendment of the law to shut out the truth; but to repel any inference, which may arise from a proposition made, not with design to admit the existence of a fact, but merely to buy one's peace. If an admission, however, is made, *because it is a fact*, the evidence to prove it is competent, whatever motive may have prompted to the declaration. In illustration of this remark, it may be observed, that if *A.* offer to *B.* ten pounds, in satisfaction of his claim of an hundred pounds, merely to prevent a suit, or purchase tranquillity; this implies no admission that any sum is due; and therefore, testimony to prove the fact must be rejected, because it evinces nothing concerning the merits of the controversy. But if *A.* admit a particular item in an account, or any other fact, meaning to make the admission as being true, this is good evidence, although the object of the conversation was to compromise an existing controversy. The question to be considered, is, what was the view and intention of the party in making the admission; whether it was to concede a fact hypothetically, in

order to effect a settlement, or to declare a fact really to exist. (1 *Phil. Ev.* 78.)

There is no point of honour guarded by the court, nor exclusion of evidence, lest it should deter from a free conversation. But testimony of admissions or declarations, taking facts for granted, not because they are true, but because good policy constrains the temporary yielding of them, to effectuate a greater good, is not admissible ; truth being the object of evidence.

4. With respect to the omission to instruct the jury, no fact is shewn, placing the judge under any obligation, to make the charge requested.

CHAPMAN, BRAINARD and BRISTOL, Js. were of the same opinion.

PETERS, J. dissented.

New trial not to be granted.