## STRANAHAN *against* EAST-HADDAM.

An offer of a specific sum, by way of compromise, to prevent a suit and purchase peace, is inadmissible against the party making such offer.

Therefore, where a prosecution having been instituted against the town of *E*, for neglect to repair a road in that town, and *P* being appointed, by the county court, a committee to see that the necessary repairs were made, *S* agreed with the select-men of such town, in consideration of 119 dollars, to repair such road, to the acceptance of *P*, within a limited time; *S* claimed to have repaired it, after which, *P* examined it, and refused to accept it, on the ground that it was not repaired according to the agreement ; the town afterwards passed a vote, authorizing the select-men to "pay *S*, 69 dollars, in full of his bill for repairs, he giving the town a discharge in full therefor ;" in an action of *assumpsit*, brought by *S*, against the town, for labour done, and materials furnished, in the repair of such road, the plaintiff offered such vote in evidence, as an admission of indebtedness on the part of the town, and a waiver of strict performance ; it was held, that such vote was an offer of compromise, and as such, was not admissible to the prejudice of the defendants.

THIS was an action of *assumpsit* for work and labour done, and materials furnished, by the plaintiff, at the request of the defendants, in and upon and for the repair of a public highway, in the town of *East-Haddam*, which it was the duty of the town to maintain and keep in good repair.

The cause was tried at *Middletown, February* term, 1836, before *Bissell*, J.

On the trial, the plaintiff claimed to have proved, that in the months of *May* and *June*, 1822, he had, at the special instance and request of the select-men, furnished labour and materials for the repair of a certain highway in the town of *East-Haddam*, and had made all necessary repairs of such highway and of the bridges thereon, which it was the duty of that town to maintain and keep in repair ; for which he claimed, that the defendants were indebted to him in the sum of 119 dollars, with interest. To repel this claim, the defendants read in evidence a contract entered into between the plaintiff and the select-men of *East-Haddam*, on the 4th of *November*, 1831, in the following terms : " That said *Stranahan*, for and in consideration of the sum of 119 dollars, to be paid to him as hereinafter specified, agrees to repair the road from his dwelling-house *Northerly* to *Colchester* line, to the acceptance of *Henry Perkins*, Esq., a committee appointed by the county court for the county of *Middlesex*, by the 1st day of *July*, 1832 ; provided the season in *May* and *June* next shall be suitable for building said road ; and if said months of *May* and *June* next, be unsuitable for building roads, said road to be completed as soon as practicable thereafter : Also, to repair the bridge over the meadow brook, on said road, within two weeks from the date of this instrument. And the town of *East-Haddam*, by their select-men, agree to pay said *Stranahan*, at any time after said 1st day of *July*, 1832, an order for said sum on the treasury of said town, when said *Stranahan* shall present to their select-men a certificate from said *Henry Perkins*, of his acceptance of said road. *East-Haddam, Nov.* 4th, 1831." [Signed by the parties.]

It was under this agreement that the labour performed and materials furnished, by the plaintiff, were performed and furnished. At the date of the agreement, there was a prosecution pending before the county court of *Middlesex* county, against the defendants, for neglecting to keep said road in repair ; and

*Middlesex,*
July, 1836.

Stranahan
*v.*
East-Haddam.

*Henry Perkins*, Esq. had been appointed, by that court, a committee to see that the necessary repairs were made thereon.

The defendants introduced evidence to prove, that on the 29th of *June*, 1832, after the plaintiff claimed to have repaired the road, in conformity to his agreement, the select-men and said *Perkins*, at the plaintiff's request, met him upon the road, for the purpose of having it examined, and of ascertaining whether it was repaired to the acceptance of said *Perkins ;* that said *Perkins*, after having inspected the road, in the presence of the plaintiff and the select-men, refused to accept it, on the ground that it was not repaired according to the agreement ; and that he pointed out to the plaintiff sundry particulars, in which he should require further repairs to be made, before he would accept it ; that the plaintiff refused to comply with these requirements, except in relation to one of the particulars ; and that said *Perkins* refused to accept the road, or to give the plaintiff a certificate of his acceptance thereof.

The plaintiff claimed, that if the jury should find, that the road and bridge had been repaired by him, and a benefit had been received, by the defendants, from the labour and materials furnished by him, although they should find that the work was not done as perfectly as the agreement required, still he was entitled to recover to that extent, not exceeding, however, the price stipulated in the agreement, and the interest thereon. And to prove that the defendants had acquiesced in the repairs made by the plaintiff, and had recognised them as conferring a benefit on the town, for which they owed a just recompense to the plaintiff, he offered in evidence the following vote of the town, passed in a town meeting legally warned and held on the 7th of *April*, 1834 : " *Voted,* that the select-men be authorized to pay *James Stranahan*, sixty-nine dollars, in full of his bill for repairs made on the road leading from his house to *Colchester* line, he giving the town a discharge in full therefor." This vote the plaintiff claimed to be an admission of indebtedness to him, and a waiver of the further performance of the agreement, such as would entitle him to recover to the extent of the value of the repairs to the defendants. To the admission of this vote in evidence, the defendants objected, on the ground that it purported to have been passed with a view to effect a compromise with the plaintiff. They also insisted, that it was not admissible for any of the purposes claimed by the

plaintiff. They further insisted, that the agreement was open and unrescinded; and that the plaintiff could not waive it and recover, in this action, to the extent of the benefit received, by the defendants, from the labour and materials furnished; and prayed the judge so to instruct the jury.

The judge admitted the vote in evidence; and instructed the jury, that the road not having been repaired to the acceptance of Mr. *Perkins,* the plaintiff was not entitled to recover as for a substantial performance of the agreement, and that no rule of damages was furnished, by the sum therein stipulated; that although the general rule is, that while a contract is open and unrescinded, the party cannot recover on the general counts in *assumpsit,* yet if one person has performed labour and furnished materials for another, under a special contract, although not in precise conformity to that contract, still, if such labour performed and materials furnished were beneficial to the other party, and he has availed himself of such benefit, he is liable, in this form of action, to the extent of the benefit so received; and that if, in this case, the jury should find, that the defendants had derived any benefit from the labour and materials furnished by the plaintiff, and had acquiesced therein and availed themselves thereof; or that they had, either expressly or impliedly, waived any further performance of the agreement by the plaintiff, they might find a verdict for the plaintiff, to the extent of such benefit; and that they were at liberty to infer such acquiescence and waiver from the vote of the town and the other facts proved.

The jury returned a verdict for the plaintiff; and the defendants moved for a new trial.

*Hungerford,* in support of the motion, contended, 1. That the vote of the town was not evidence of an admission of indebtedness, or a waiver of further performance. The sole object of the vote, was, to buy the town out of a difficulty—to effect a compromise. It contains no admission of the plaintiff's claim. Suppose an insurance company pass a vote, authorizing their agent to pay a certain sum to settle a disputed claim; this is no admission that any thing is due. If it were, it would never be safe to make an offer for the purpose of compromise. *Morgan* v. *Birnie,* 9 *Bing.* 672. (23 *Serg. & Lowb.* 415.)

2. That the court in charging the jury, that if the defend-

ants had derived any benefit from the labour and materials of the plaintiff, and had acquiesced in, and availed themselves of the same, they might give a verdict for the plaintiff, to the extent of such benefit, mistook the law. This has never been allowed, except where the non-performance has been waived, or excused. Without this, if the plaintiff has not fulfilled his agreement, he can recover nothing. *Bates* v. *Hudson*, 6 *Dowl. & Ryl.* 3. (16 *Serg. & Lowb.* 249.) *Sinclair* & al. v. *Bowles*, 9 *Barn. & Cres.* 92. (17 *Serg. & Lowb.* 340.) *Roberts* v. *Havelock*, 3 *Barn. & Adol.* 404. (23 *Serg. & Lowb.* 105.) *Morgan* v. *Birnie*, 9 *Bing.* 672. (23 *Serg. & Lowb.* 415.) *Faxton* v. *Mansfield*, 2 *Mass. Rep.* 147. *Stark* v. *Parker*, 2 *Pick.* 267. *Haywood* v. *Leonard*, 7 *Pick.* 18¹. *Ellis* v. *Hamlen*, 3 *Taun.* 52. *Burn* v. *Miller*, 4 *Taun.* 745. *Jennings* v. *Camp.* 10 *Johns. Rep.* 94.

3. That if the plaintiff can recover any thing, in this action, the sum stipulated in the agreement is to be taken as the value of the whole services agreed to be performed : that is to be the basis of, and the remuneration for, a part performance. *Hayden* v. *Madison*, 7 *Greenl.* 76. *Burlingame* v. *Burlingame*, 7 *Cowen* 92. *Haywood* v. *Leonard*, 7 *Pick.* 181. *Pepper* v. *Burland*, *Peake's Ca.* 103.

*R. S. Baldwin*, contra, contended, 1. That the vote of the town was admissible as evidence of an acknowledged indebtedness, and a waiver of further performance. *Wallace* & al. v. *Small* & al. 1 *Moo. & Mal.* 446. (22 *Serg. & Lowb.* 355.) *Watts* v. *Lawson*, cited *ibid. in notis.* 1 *Phil. Ev.* 83. *Anth. N. P.* 190. *The Hartford Bridge Company* v. *Granger* & al. 4 *Conn. Rep.* 142.

2. That as the contract was to repair the road to the acceptance of the committee of the county court, not of *Perkins*, in his individual capacity, his authority was limited to *necessary* repairs. The county court could authorize no other. *Perkins*, being satisfied as committee, this was sufficient, and his certificate was wrongfully withheld : consequently, the plaintiff was entitled to recover as for a *substantial* performance. *Worseley* v. *Wood*, 6 *Term Rep.* 716. *Moser* & al. v. *St. Magnus* & al. cited *ibid.*

3. That if the contract was not precisely performed, yet, in contracts of this description, if the work is done, and the mate-

rials are furnished, and thus a benefit conferred and received, the plaintiff is entitled to recover *pro tanto*, not exceeding the contract price. *Bul. N. P.* 139. There is no ground of pretence that the jury adopted any other rule than the contract price : no other was claimed.

HUNTINGTON, J. This was an action of *assumpsit*, for work and labour done, and materials furnished, by the plaintiff, at the request of the defendants, in and upon and for the repair of a public highway, in the town of *East-Haddam,* which it was the duty of the town to maintain and keep in good repair. In the progress of the trial of the cause, at the circuit, the plaintiff, among other things, claimed, that the defendants had waived their legal right to insist upon a strict performance of the stipulations contained in the written contract annexed to the motion ; that they had dispensed with a condition beneficial to them, and had acquiesced in, and availed themselves of, the labour and materials furnished by the plaintiff. In support of this claim, the plaintiff offered in evidence, a vote of the town, authorizing the select-men to pay the plaintiff, "sixty-nine dollars in full of his bill for repairs, he giving the town a discharge in full therefor." It was admitted, by the court, notwithstanding the objection of the defendants ; and the jury were instructed, that they were at liberty to infer the acquiescence and waiver on which the plaintiff relied, from the vote, and the other facts proved in the case. Whether this evidence was properly admitted, for the purpose for which it was offered, is one of the questions presented to us, by this record.

The plaintiff supposes this vote to be an admission, or a recognition, of an indebtedness to him, on the part of the town, arising from the services he had performed, and the materials he had furnished ; that there was nothing in it which could be considered confidential, for it was placed on the records of the town—nothing which indicated it was intended as a compromise, or was passed with the view of avoiding litigation. It referred, in its terms, to a road, which the town was obliged to keep in a suitable condition for public use, and to repairs, which had been made upon it, by the plaintiff ; and the direction to pay a specified sum for these repairs, was a direct and unequivocal admission, by the defendants, that they had received the

benefit of the plaintiff's services and property, and were legal-
ly and equitably bound to pay for them. The defendants, on
the other hand, insist, that the vote, on its face, purports to be
merely a naked proposition to pay a certain sum, by way of
compromise; that it neither expressly, nor by implication, ad-
mits their liability to the plaintiff; that a condition is annexed
to it, with which the plaintiff refused to comply; and there-
fore, it is not an admission that any sum was due to the plain-
tiff.

It was well observed, by *Garrow*, B., in *Froxdell* v. *Lewe-
lyn*, 9 *Price* 122., that "the rule respecting the inadmissibility
in evidence of what takes place between persons attempting to
make an end of subsisting differences, by offers made by either,
with that view, and which, if given in evidence, might con-
clude them, is certainly a wholesome and useful rule." Every
effort, fairly intended to prevent a law-suit, by an honourable
and equitable adjustment of the controversy between the par-
ties, should be countenanced and encouraged. The utmost
liberality should be extended to communications, which pass
between the parties having this object in view. Great freedom
and latitude should be indulged to them, in this particular.
They should be permitted freely to interchange their views up-
on the subject in dispute, to make offers of settlement, to pro-
pose mutual sacrifices, to endeavour to settle their differences,
by mutual concessions; and if, unfortunately, these efforts
should be unsuccessful, their communications to each other
should not be perverted, to promote the interests of either. The
law should throw over them the shield of its protection. In
this way, the evils of litigation will oftentimes be prevented.
Time and money will thus be saved; violent passions and an-
gry contentions will be allayed; and harmony, friendship and
good feeling, take the place of bitter revilings and perpetual en-
mity. With such views, courts of justice, from an early peri-
od, have held, that offers of compromise are not to be received
in evidence, to the prejudice of the party making them. Eve-
ry person has a right to buy his peace, to escape from an action.
The law, therefore, "repels any inference, which may arise
from a proposition, made, not with design to admit the exist-
ence of a fact, but merely to buy one's peace. Testimony of
admissions or declarations, taking facts for granted, not because
they are true, but because good policy constrains the temporary

*Middlesex,*
*July, 1836.*

*Stranahan*
*v.*
*East-Haddam.*

yielding of them, to effectuate a greater good, is not admissible." *Hartford Bridge Company* v. *Granger*, 4 *Conn. Rep.* 142.

In the application of these principles, we find it stated, in the elementary treatises, and in the reported cases, as a general rule, that an offer of a specific sum, by way of compromise, to prevent a suit and purchase peace, is inadmissible. If *A* sue *B* for 100*l.*, and *B* offers to pay 20*l.*, it shall not be received as evidence : for that neither admits nor ascertains any debt, and is not more than saying, he would give 20*l.* to get rid of the action. 2 *Stark. Ev.* 38, 9. *Peake's Ev.* 19. *Bul. N. P.* 236. 1 *Saund. Pl. & Ev.* 45. *Turton* v. *Benson*, 1 *P. Wms.* 497. *Waldridge* v. *Kennison* & al. 1 *Esp. Rep.* 143. *Gregory* v. *Howard*, 3 *Id.* 313. *Slack* v. *Buchanan*, *Peake's Cas.* 5. In *Wayman* v. *Hilliard*, 7 *Bing.* 101., which was an action by an off-going, against an in-coming tenant, upon an agreement by the latter, to allow the former for all crops sown before a certain day, with a count upon an account stated, the plaintiff offered to prove, that upon his demanding 40*l.*, previous to the commencement of the action, the defendant offered to give 17*l.* The evidence was rejected, by *Littledale*, J. at the circuit ; and the court of *C. B.* were of opinion, that it was properly excluded. *Tindal*, Ch. J. says, the defendant has merely offered to pay money, and for aught that appears, it might only have been for the purpose of preventing a suit. *Park*, J. concurred. Here, the defendant has merely offered a sum of money to escape from an action ; and *Bosanquet*, J., added, there has been no acknowledgment of debt here : the defendant merely makes an offer to purchase peace. In the case of *The Hartford Bridge Company* v. *Granger*, 4 *Conn. Rep.* 148., *Hosmer*, Ch. J., in delivering the judgment of the court, says, if *A* offer to *B* ten pounds in satisfaction of his claim of an hundred pounds, merely to prevent a suit, or purchase tranquillity, this implies no admission that any sum is due ; and therefore, testimony to prove the fact, must be rejected, because it evinces nothing concerning the merits of the controversy.

We have been referred to the case of *Wallace* & al. v. *Small* & al. 1 *M. & M.* 446., and the reporter's note of another case, *Watts* v. *Lawson*, which, it is supposed, establish a doctrine somewhat varying from the decisions to which we have refer-

red. If it were necessary, we might apply to these cases, the remarks which have often been applied, by judges in *Great-Britain*, to their own decisions at *Nisi Prius* :— that they are made without much opportunity for examination or time for reflection, amid the pressure of business at the circuit, where despatch, if not indispensable, is, at least, important. The authority of such cases, is, therefore, not ordinarily pressed upon the court, when sitting to correct errors which these causes have occasioned. If they are to be understood, (as it seems they were by the reporter,) to decide, that an offer of a specific sum, by way of compromise, is admissible in evidence, *unless accompanied with a caution that the offer is confidential*, they are unjust; subversive of all attempts between parties to settle their differences ; opposed to the previous and subsequent decisions on this point; and we cannot yield to their authority. We are not willing, however, to suppose, that the distinguished jurist, who is reported to have so decided, intended to abolish one of the most salutary and well established rules of evidence; and this, too, in opposition to numerous cases in which that rule had been fully sustained. In the case of *Wallace* v. *Small*, the question in dispute was, whether the defendants had executed the charter-party. For the purpose of fixing them with the contract, evidence was given of an offer by them, of a specific sum, which they refused to increase, at the solicitation of a friend of the plaintiffs, saying, " we shall lose enough by the charter-party, as it is." Nothing was said about this communication being without prejudice. Lord *Tenterden* admitted the evidence, and said, he thought it good *prima facie* evidence of liability. It is not said to be without prejudice ; and an offer to compromise, may be very well made without any restriction as to confidence. We are inclined to think, only that part of the evidence, which might amount to an implied admission that they signed the charter-party, *viz.*, " we shall lose enough by the charter-party as it is," was allowlowed to operate as proof of the fact in controversy. The whole was received, because it was necessary for the witness to explain the time and circumstances under which the admission was made. It was proper for him to state he had been informed, by the plaintiffs, that the defendants had offered a specific sum, in consequence of which, he went to the defendants, and advised them to increase their offer, which they refused to do,

*Middlesex*,
July, 1836.

Stranahan
*v.*
East-Haddam.

adding the words before-mentioned. If any part of the evidence was admissible, the fact that an offer had been made, could not have been excluded. The offer, however, could not be allowed to operate to the prejudice of the defendants; but the language used by them, on refusing to add to this offer, was probably considered, and certainly by a very *liberal* construction, as embraced by the rule, that if an admission is made *because it is a fact,* the evidence to prove it, is incompetent, whatever motive may have prompted to the declaration. It may have been supposed, that the defendants did not intend to deny, but to admit, they had signed the contract; else, why should they have said, " we shall lose enough by the charter-party as it is ?" What could they lose by a contract, to which they were not parties? The same remarks may be applied to the case of *Watts* v. *Lawson,* cited in the note. It was an action for a libel. The plaintiff, *in aggravation of damages,* was permitted to show, that the defendant had agreed to insert in his paper, in which the libel originally appeared, another article, the terms of which had been adjusted between the parties; and that upon its insertion, the action should be abandoned; but that he had never inserted it. This evidence was not offered to prove any fact material to the plaintiff's right to recover. It was adduced to show the malice with which the defendant was actuated, and thus to enhance the damages. If, however, these cases cannot be substantiated on the grounds we have suggested, or on some other, consistent with the doctrine that an offer of a specific sum, by way of compromise, to prevent a suit and purchase peace, cannot be received in evidence to the prejudice of the party making it, we cannot hold them to be declaratory of the common law, and reject them as unsupported by principle or authority.

We have thus adverted to the principal decisions bearing upon the point before us, which, we think, are a sound exposition of the law which they profess to declare and establish; and the present case is clearly embraced by them. The vote of the town is simply an instruction to its agents, to pay a specified sum in full of the plaintiff's claim, provided he will receive it in satisfaction and discharge of that claim. It neither admits nor ascertains any debt. For aught that appears, it may have been offered merely for the purpose of preventing an action. There is not the slightest intimation that the town had acqui-

esced in the non-performance of the written agreement. The reverse appears from the facts stated in the motion. That agreement bears date, *Nov.* 4, 1831. In *June*, 1832, Mr. *Perkins*, the person to whose acceptance the road was to be repaired, decided, that it was not made and repaired according to the contract, and pointed out to the plaintiff, a number of particulars as to which he should require further repairs to be made, before he could accept the same. The plaintiff refused to comply with these requirements, except in relation to one of the particulars : as to the others, he, at all times, refused to comply with them. The motion is silent as to any act done by the town, from which a waiver of the contract can be inferred, up to the period when the vote, authorizing the payment of sixty-nine dollars, was passed. No acquiescence can be presumed from the fact that the town had received the benefit of the plaintiff's labour and materials ;—because it could not repudiate them. They were bestowed and used on a public road, in which the whole community had an interest, in pursuance and part performance of a contract to repair the road. The town could not remove these materials ; they constituted a part of the highway : nor could there have been any prohibition to proceed in the work ; for it was in progress under a valid agreement ; and the town, in no other manner, availed itself of the plaintiff's services and materials, than to permit the road to be used by the public, which it could not lawfully prevent. From these facts we can draw but one inference, and that is this : The town, denying its liability to pay the plaintiff any thing, in consequence of his failure to fulfil his agreement, and insisting upon a substantial performance of it, was, nevertheless, willing to pay him a reasonable compensation for what he had done, provided he would receive it in full, and thus the expense and trouble of a law-suit be avoided. To buy peace, and close the controversy, the vote was passed. Such, we think, was the design of the town, in adopting it, fairly deducible from all the facts appearing upon the motion, independent of the condition which is attached to the vote. *That* shows their object still more clearly and definitely. The specified sum was not to be paid, unless when received, the plaintiff gave a discharge in full of his bill for the repairs made on the road. The selectmen could pay nothing, unless upon the performance of that condition. Can it reasonably be supposed, that the town ad-

*Middlesex,*
July, 1836.

Stranahan
*v.*
East Haddam.

mitted any thing to be done, when their vote declared that nothing should be paid, except upon the express condition that the sum specified, should be in full of the plaintiff's claim? Is not the conclusion most just, that the offer was made to avoid litigation, and put an end to an already protracted suit?

It was urged, that the offer was not confidential, because it was in the form of a vote recorded in the office of the town-clerk; and therefore, every person knew, or might have known it. It is true, it was not so far confidential, as that a knowledge of it was confined to the parties interested. That, however, is not the test to determine whether it was made by way of compromise. If it were, the rule which excludes such offers of compromise, would be wholly unnecessary, in such cases, inasmuch as the facts, when known only to the parties to the suit, would be incapable of proof in a court of law; and, therefore, the party making them could not be prejudiced. Besides, such a test would exclude towns and other corporations, whose votes are the usual evidence of their acts, from making proposals to settle subsisting differences. These votes are, or ought to be, recorded; and in the case of towns, are subject to the inspection of every individual who desires to see them. If offers of compromise, in order to be excluded, are confidential, in the sense claimed by the plaintiff, towns would be deprived of the benefit of a just and equitable rule of evidence, to which they, equally with individuals, are entitled.

We are of opinion, therefore, that the vote of the town, for the purposes for which it was offered, should have been rejected; and a new trial must be granted. The result to which we have come, upon this point, renders the expression of an opinion on the other question argued before us, unnecessary. It is, however, proper to observe, that if the motion is fairly open to the construction given to it, by the counsel for the defendants, the jury may have been misled, by the want of due precision in the instruction given to them. It would have been clearly incorrect to have stated to them, that upon the facts stated in the motion, they could give damages to the plaintiff, exceeding the contract price; or could find a verdict for the plaintiff, if he voluntarily abandoned the written contract, and refused to perform it, and there was no waiver of a substantial performance of it, and the defendants had not acquiesced in, and availed themselves of, the labour and materials furnished by the plain-

tiff. The authorities cited by the counsel, fully sustain us in these views. It is possible the jury may have understood the judge to have said, that in respect to the damages, they might, *for every purpose*, lay out of view the contract price; and that the plaintiff was entitled to recover, although the town had never accepted the work done, and materials furnished, nor waived the performance of the agreement. The judge did not intend to give countenance to any such doctrine; nor are we prepared to say the motion is fairly susceptible of a construction which would imply it. Perhaps all doubts might have been removed, by a more precise and definite statement of the law upon these points; and were the only questions in the case, those which grow out of the charge to the jury, we should feel bound to examine it with great care and attention, lest there might be a failure of justice, in consequence of the misconception by the jury, of the law by which they were to be governed, fairly to be imputed to the language of the instruction. This, however, becomes unnecessary, as the motion for a new trial must prevail, for the admission of improper evidence; and if there be a second trial, the court will take care, that this ground of objection to the charge, shall be obviated.

In this opinion the other Judges concurred.

New trial to be granted.