SIMONE CORPORATION *v.* CONNECTICUT LIGHT AND POWER COMPANY

PETERS, ARMENTANO, GRILLO, BIELUCH and COVELLO, Js.

Argued April 13—decision released July 6, 1982

*James K. Robertson, Jr.,* for the appellant (defendant).

*Jeffrey B. Sienkiewicz,* for the appellee (plaintiff).

GRILLO, J. This action, sounding in negligence, was instituted by the plaintiff, a real estate developer, against the defendant, an electric utility company. The gravamen of the plaintiff's complaint is that the defendant, in installing underground utilities in the roadway of a residential subdivision pursuant to an easement granted it by the plaintiff, performed this work on the road negligently, causing the plaintiff additional expenses which reduced profits from the subdivision.

The trial court found that the defendant's negligence required additional work by the plaintiff to restore the roadbed and shoulder and awarded damages of $13,700.50 on the first count. It further found that the plaintiff was unable to continue the development of the residential subdivision for nine months because of the delay and neglect of the defendant in its installation work and awarded as additional damages interest on the plaintiff's subdivision improvement loan that accrued during that period in the amount of $13,132.53 on the second count.

The defendant raises three issues on appeal: (1) whether the court erred in excluding claimed admissions of fact made by the plaintiff's president

to the defendant's claims adjuster; (2) whether the court erred in concluding that the defendant's negligence delayed the plaintiff's development for nine months and whether that conclusion was without support in the evidence and contrary to law, logic, and reason; (3) whether the trial court erred in awarding as damages certain road construction expenses and interest charges which, the defendant asserts, the plaintiff would have necessarily incurred irrespective of the defendant's negligence.

With reference to the defendant's claim that the court improperly excluded claimed admissions, the circumstances are as follows: Mr. Thomas Connell was the defendant's claims adjuster, and on two occasions he met with Mr. Anthony Simone, the plaintiff's president, to discuss settlement of the plaintiff's claim. Over the plaintiff's objection that the statements were made during the course of settlement discussions, the adjuster was allowed to testify as follows: "And he [Simone] said that he was not interested in the shoulders of the road because they will be torn up during the course of development by excavating equipment, cement trucks, building supply trucks, subcontractors' vehicles, and that when he put the—the material that was excavated from the foundations and did the landscaping, that he would take care of the shoulders of the road anyway. He was not concerned about that. He simply wanted help with the road surface in the area where the silt from the open trench had allegedly washed onto a portion of his road." The court, rejecting the claim of the defendant that the statement ascribed to Simone was "not part of settlement talk" ordered the statement stricken because he [Connell] "got in settlement things there." Thereafter, the defendant

again pursued his claim for admission of the stricken testimony, contending that it was being offered as an admission and not as part of the settlement discussions. The court again rejected the claim, holding that the testimony encompassed settlement discussions.

It has long been the law that offers relating to compromise are not admissible on the issue of liability. *Nearing* v. *Bridgeport,* 137 Conn. 205, 209, 75 A.2d 505 (1950); *Stranahan* v. *East Haddam,* 11 Conn. 507, 512–19 (1836); McCormick, Evidence (2d Ed.) § 274. So, too, it has long been established that an admission of fact made during negotiations, where the statement was intended to state a fact, is competent evidence. *Evans Products Co.* v. *Clinton Building Supply, Inc.,* 174 Conn. 512, 518, 391 A.2d 157 (1978); *Hartford Bridge Co.* v. *Granger,* 4 Conn. 142, 148 (1822). This proposition is the basis of the defendant's claim of admissibility.

The court concluded that it was not clear whether the proffered evidence related to compromise or factual admission.[1] "Where it is not clear whether the statement is an offer of compromise or an admission of liability [or other fact] and the motive of the declarant is subject to speculation and conjecture, the statement must be excluded." Tait & LaPlante, Handbook of Conn. Evidence (1976) § 11.5 (d) (2), p. 189.

Later, the further attempt by the defendant to cull out of the entire settlement discussions statements made by Simone without eliciting the

---

[1] The Court: "I don't get a whole idea of the whole conversation in what context it was said. I don't get an idea of the whole conversation of what context it was said, whatever remark it may be, because I don't get a whole picture of the situation."

entire subject of conversation and sans an offer of proof or, as the trial court commented— "You . . . give me [conversation] in dribbles and drab statements"—and labeling them admissions of fact likewise avails the defendant nothing,[2] and cannot be considered as isolated factual concessions. A litigant cannot eradicate from an entire subject of compromise colloquy a statement relating to the subject of compromise and by linguistic legerdemain elevate it to an admission of fact. The trial court properly excluded the testimony.

The defendant next challenges the conclusion of the trial court that the defendant's negligence delayed the work on the subdivision project for nine months. It further opposes the award of road construction expenses as damages. With reference to these two contentions, there was evidence before the trial court, succinctly stated, as follows:

As of September 21, 1972, the roads on the subdivision had been boxed and graveled. Blacktop was to be applied upon the utility installation. The shoulders were shaped and pitched down into the roadbed. The plaintiff granted an easement to the defendant on that date. The plaintiff could have reasonably expected the electrical installation to be complete within eight to ten working days. The defendant did not open the trench until October 13, 1972. The plaintiff's subdivision was selected as a good site to demonstrate the effectiveness of a new trenching machine.

---

[2] For analogies in jury cases with reference to this rule of law in cases involving claimed error predicated upon detached sentences of a charge, see *State* v. *Guthridge,* 164 Conn. 145, 154, 318 A.2d 87 (1972), cert. denied, 410 U.S. 988, 93 S. Ct. 1519, 36 L. Ed. 2d 186 (1973); *M. Shapiro & Son Construction Co.* v. *Battaglia,* 138 Conn. 238, 243, 83 A.2d 204 (1951).

When Connecticut Light & Power started the project it knew it did not have enough cable to complete the installation. The work order specified that 3633 feet of cable would be required. The defendant ran out of cable after it had installed approximately 278 feet. It left the site, but did not backfill the 1118 feet of open trench. The rainstorm which preceded the defendant's work, which the defendant claims eroded the road, was not a substantial factor in the road's condition. When the trench was opened the excavated dirt was put on the roadway by the machinery used. After the defendant left the job the clay soil mixed with the gravel ruining the gravel in the road. Mud had to be scraped off. In both October and November of 1972, Simone called Connecticut Light & Power claiming damages to his road caused by the open trench. An on-site inspection by an employee of the defendant satisfied the employee that soil from the trenching operation was washing onto the road. The defendant did not refill the trench at that time. In November of 1972, the plaintiff decided to close down the site because of heavy rains and the condition of the road. The trench remained open throughout the winter.

Connecticut Light & Power returned to the site in February of 1973. At that time the road was barely passable. Upon the plaintiff's request, a civil engineer inspected the site in March of 1973. He recommended that all the clay material be removed from the road before it could be paved. The defendant completed work on the site in April of 1973. As of June, 1973, the road was washed out, and not ready for paving. During June and July the damage to the roadway was corrected and the

shoulders reshaped. The contractor's bills for road repairs totaled $13,700.50. The first electric meter was installed on June 13, 1973, nine months after the easement had been granted.

A review of the evidence, the record, and statements of fact in the briefs makes it readily apparent that there was, as to certain aspects of the respective positions of the parties, conflicting evidence with respect to claimed delay and road repair damages. "Where there is conflicting evidence . . . we do not retry the facts or pass upon the credibility of the witnesses. The trial court determines the credibility of witnesses . . . . Where the evidence, as here, is in conflict, its probative force is for the trier." (Citations omitted.) *Robert Lawrence Associates, Inc.* v. *Del Vecchio,* 178 Conn. 1, 14, 420 A.2d 1142 (1979).

The plaintiff conceded in oral argument that the most which the court could have logically found was a six month delay from November through April. Assuming, arguendo, that the time delay was six months, such a finding would not invalidate the court's conclusion that that delay was instrumental in the deterioration of the road conditions requiring restoration expense. The evidence provided a factual basis for the court's decision concerning both delay and resulting expenses. "It is only in the clearest circumstances, where no other conclusion could reasonably be reached, that the determination of fact by the trier may be disturbed." *McLaughlin* v. *Chicken Delight, Inc.,* 164 Conn. 317, 323–24, 321 A.2d 456 (1973). Absent such demonstration, as here, the court's conclusions require no further exegesis.

Finally, the defendant attacks the award of interest payments.[3] As recited above, the obligation of the plaintiff to pay interest on the bank loan preexisted the performance of work by the defendant. There is no evidence indicating that the interest payments were caused by the defendant's negligence. There is no evidence indicating that the interest payments made during the nine months were in addition to interest payments that followed immediately upon payment of $206,000 on the loan at a time prior to the defendant's installation of the underground utilities. Briefly stated, the record is barren of proof to support any causal link between the delay and those interest payments.

Construing the decision of the court as an award to the plaintiff for lost profits, we find no foundation laid for such a conclusion. There was no evidence as to what the plaintiff's profits would have been had the defendant installed its electric wires in a reasonable time and manner, or what its profits actually were after the defendant had laid its cable. To have justified an award in the nature of profits in this case, it was incumbent upon the plaintiff to establish what those profits would have been had there been no delay and what they were in fact. These factors, which the plaintiff was required to prove, were patently absent in the evidence. Thus,

---

[3] At the outset it is noted that the defendant in argument asserted that the court's award of interest was in reality one based on lost profits. The plaintiff, taking the position that the judgment was for interest paid by it, expressed surprise at this position. It need not have been surprised since an award of damages must conform to the pleadings and the claim was made for lost profits. Nowhere does it request repayment of interest. The respective position taken by the parties is one of semantics rather than substance—a distinction without difference. Furthermore, our resolution of the basic issue—whether termed a claim to recoup interest paid or for lost profits—applies regardless of difference in theories.

the court was left with no adequate basis for determining lost profits. Damages are an essential element of a plaintiff's proof and must be proved with reasonable certainty. *Bianco* v. *Floatex, Inc.*, 145 Conn. 523, 525, 144 A.2d 310 (1958). "Damages for losses of profits are recoverable only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty." *Humphrys* v. *Beach*, 149 Conn. 14, 21, 175 A.2d 363 (1961). The court erred in awarding damages of $13,132.53 in interest on the plaintiff's loan.

There is error in part, the judgment is set aside, and the case is remanded with direction to render judgment for the plaintiff in accordance with this opinion.

In this opinion the other judges concurred.