[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This matter claiming damages came to this Court on April 7, CT Page 6729 1987 by Writ, Summons and Complaint. The defendant filed an Answer and Counterclaim and thereafter the case proceeded through amendments and other pleadings to trial on May 29, 1991.
The undisputed facts are as follows: the plaintiff owned and operated a business known as the Courthouse Deli and Variety in 400 square feet of space at 168 Fairfield Avenue, Bridgeport. He was a month-to-month tenant when he took possession of the subject premises from the landlord, one Koenig. In June, 1986, Koenig sold the building containing the business to Philip J. Kuchma, the present landlord and defendant who is a real estate developer. No written lease existed between the plaintiff and either landlord.
On June 13, 1986, Kuchma sent a letter to Rosa. He advised that he was the new owner and "would like to continue renting the space to you on a month-to-month basis at $425.00 per month (your current monthly rent. . .)" (Defendant's Exhibit 1).
The purpose of his purchasing the property was to renovate it and add two stories.
In December, 1986 the defendant landlord began renovation of the building and erected a wooden framework or sidewalk bridge, a portion of which stood directly in front of the plaintiff's business entrance.
On January 15, 1987 the defendant wrote to Rosa stating that as of January 31, 1987 the property would "no longer be available for rent," and the plaintiff would "not be able to occupy the premises after January 31, 1987." (Defendant's Exhibit 2) The plaintiff failed to vacate the premises. On March 23, 1987 the defendant commenced a summary process action in which a stipulation was entered on June 1, 1987. By its terms Rosa agreed to vacate by 6 p. m. June 30, 1987. Kuchma agreed to pay the sum of $3000.00 for "relocation expenses" plus $425 as a return of the security deposit without interest, less $362 for use and occupancy for June 1987, for a total of $3,063. Further, both parties stipulated that reasonable use and occupancy would be $362 per month. These terms were made without prejudice to any other action arising from the landlord-tenant relationship.
Counts One and Three rest on a breach of the Covenant of Quiet Enjoyment.
"The Covenant of Quiet Enjoyment is that the grantee shall have legal quiet and peaceful possession and is broken only by an entry on and an expulsion from the land or from some actual disturbance of possession by virtue of some paramount title or right." National Realy Holding Trust v. Nelson, 33 Conn. Sup. 22, 25
(other citations omitted). CT Page 6730
Here the defendant, as Owner of the Premises and Landlord, had a paramount title with regard to the subject premises. He was obligated to protect the tenant's right to quiet enjoyment, even though he notified the plaintiff in January of 1987 that the month-to-month tenancy was to be terminated.
"The obligation of the landlord to protect his tenant relative to the tenant's right to quiet and peaceful possession and enjoyment extends only to evictions and disturbances caused by himself. . . ." Id, at 25.
The defendant caused disturbance by proceeding with the renovation of the building in December. Although he testified that he had told the plaintiff of his plans for the building, he failed to communicate this in writing until January 15, 1987, (Defendant's Exhibit I) at the earliest. The Notice to Quit was not served until March 10, 1987, although the January letter indicated that the property would not be "available for rent" as of January 31, 1987.
The plaintiff claimed that, when renovation began, the sidewalk bridge partially obscured and obstructed his business entrance, thereby causing his business to decline. His sign was removed, and the activities of the defendant's workers caused dust and noise to assail the premises, adding to his business woes. The plaintiff introduced photographs taken in February, 1987, showing the front of the premises without a sign visible. The defendant testified that the sidewalk bridge did not block the business and that the sign, removed for one day only, was replaced on the building above the scaffolding. He also stated that he had stopped by Rosa's premises 10 to 20 times to discuss his plans and Rosa's removal and denied, "absolutely", that the renovation work in the adjoining space affected Rosa's business.
Secondly, the defendant failed to repair the boiler which provided heat to the plaintiff's store. The defendant claimed he knew when he purchased the building that the boiler did not operate. In December, 1986, the store was unheated. Rosa testified that he called Kuchma's home, and Kuchma sent a kerosene heater. This did not heat the store satisfactorily, and several days later Kuchma sent electric heaters. The plaintiff, who was responsible for paying for heat, hired an electrician to install two circuits, paying the electrician $392.50 (Plaintiff's Exhibit E). The plaintiff even reported the matter to the health department, which advised him that he could not use the kerosene heater. The defendant contended that he had no obligation to provide the plaintiff's premises with heat because there was no lease and because Rosa paid all utilities. There was no evidence introduced that Rosa's premises had been unheated the prior winter when Koenig owned the property. Although Rosa was responsible for paying for his utilities, it cannot be CT Page 6731 inferred therefore that he was to provide the source of heat. Since that had apparently been the boiler located in adjacent premises, not within the plaintiff's possession, it is difficult to believe the defendant's assertion that Rosa was expected to provide the source of heat.
Throughout cross-examination Kuchma was defensive and occasionally argumentative. Rosa presented himself as the more credible of the two parties. The court finds that the defendant breached the covenant of quiet enjoyment.
In Count Two the plaintiff alleges that the defendant conducted the renovations in a manner that was negligent with reference to the plaintiff's business operations. He claims that a burglary on January 26, 1987, which resulted in the loss of business equipment and inventory, was caused by the failure of the defendant's workers to properly secure the adjoining premises thereby allowing burglars to gain entrance to his premises. This count sounds in breach of the covenant of quiet enjoyment and comes within the framework of the foregoing discussion. Furthermore, the plaintiff's testimony did not bear out his claim of negligence. No evidence was offered from police or construction workers to corroborate the plaintiff's assertion. Therefore, he did not prove his allegation by a preponderance of the evidence.
In Count Five the plaintiff alleges that he was constructively evicted. "To take advantage of a constructive eviction the tenant must abandon the property within a reasonable time. . . ." Welk v. Bidwell, 136 Conn. 603, 609.
"A substantial interference with the tenant's beneficial enjoyment of the premises resulting from a failure to furnish essential services would be sufficient to constitute eviction if the tenant had actually vacated the premises for that reason." (Citations omitted). "It is clear . . . that the defendant could not prevail upon such a ground so long as he continued to remain possession of the premises." S.H.V.C Inc. v. Roy, 37 Conn. Sup. 579,585-586.
Here the plaintiff did not abandon the property despite the alleged conditions until after the defendant had commenced a summary process action. Therefore, the plaintiff cannot prevail on his claim that he was constructively evicted.
Throughout the complaint the plaintiff alleged financial hardships and emotional problems that made him unable to support his family. There was no evidence to corroborate this claim from medical doctors or psychologists or other expert witnesses.
The plaintiff alleges in Count Six that the plaintiff violated CT Page 6732 the Unfair Trade Practices Act (Connecticut General Statutes 42-110a
et seq.; hereafter CUTPA) He bases his claim on the acts which he believes were aimed at having him vacate without resort to the summary process statutes. The plaintiff claims damages, punitive damages, attorney's fees, costs and interest.
By the time of the January 15 letter and more importantly, the date of the Notice to Quit, there had already been interference with the plaintiff's right to possession.
Connecticut General Statute 42-110b provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." In subsection (d) the legislature specifies that "[i]t is the intention of the legislature that this chapter be remedial and be so construed." Section 42-110(4) provides that "trade" and "commerce" include the "sale or rent or lease . . . of any [real] property . . . in this state."
In Conaway v. Prestia, 191 Conn. 484, (1983) the Connecticut Supreme Court stated:
 "For guidance in determining what may constitute unfair or deceptive acts or practices, CUTPA directs us to the `interpretations given by the Federal Trade Commission and the federal courts to Section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. § 45 (a)(1) . . . as from time to time amended.' General Statutes Sect. 42-110b (b)." Ivey. Barnum O'Mara v. Indian Harbor Properties Inc., 190 Conn. 528, 533, 461 A.2d 1369 (1983). We have held, as a threshold requirement, private litigants proceeding under CUTPA "must demonstrate some nexus with the public interest." Id., 537. (at 492)
The Court continued:
 In FTC v. Sperry Hutchison Co., 405 U.S. 233, 92 S.Ct. 898, 31 L.Ed.2d 170 (1972), the United States Supreme Court . . . proceeded favorably to cite the factors considered by the [Federal Trade] Commission in determining whether an action or practice, while not explicitly in violation of the law or deceptive, is nevertheless unfair: (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some CT Page 6733 common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers. . . ." Id., 244n. (at 492-493)
A violation of CUTPA may be established by showing a practice amounting to a violation of public policy. Web Press Services Corporation v. New London Motors. Inc., 203 Conn. 342, 355. A breach of public policy, in turn, may result from a violation of another statute. Tillquist v. Ford Motor Co., 714 F. Sup. 607, 616 D.Conn. 1989. (See also Daddona v. Liberty Mobile Home Sales. Inc., 209 Conn. 243, 257-258.)
The Court finds that the defendant violated CUTPA by removing the plaintiff's sign and by failing to provide him with an effective heating source. These acts offended public policy "within at least the penumbra" of the concept of unfairness. Absent an unequivocal act expressing the termination of the tenancy, the tenant, in December, had the right to operate his business and obtain heat without interruption. Furthermore, the acts offended public policy when the Plaintiff failed to utilize the summary process statutory scheme set forth in C.G.S. 47a-23 et seq.
The defendant knew that renovation work would begin shortly after his purchase, yet he failed to take the legal steps necessary to ensure that Mr. Rosa's tenancy was terminated before work commenced. The Court finds that his demeanor at the trial indicated his indifference to both the adverse effects on Mr. Rosa's business as well as the legal process required to obtain possession of the premises. He stopped providing heat to the premises; his contractors caused dust and dirt to be released into the environment and may have caused the security of the premises to be compromised; he was careless in his removal of the Plaintiff's sign. Even had the sign been replaced, its location caused it to lose much of its efficacy during the construction work.
The Court, having found a CUTPA violation, turns to the issue of damages. Section 42-110g (a) provides that "Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited in Sections42-110b may bring an action to recover actual damages. . . . The Court may award punitive damages and provide such equitable relief as it deems necessary or proper."
The burden of proving damages is on the party claiming them. Gargano v. Heyman, 203 Conn. 616, 620; Conaway v. Prestia, 191 Conn. 484, 493-494. Rosa claims damages based upon his loss of business and a $2500 loss due to the break-in of January 1987. Regarding his loss of business income, the plaintiff entered into evidence copies of his Sales and Use Tax returns for 1984, 1985 and for three quarters of 1986. Based on his cost of goods sold his business increased over these years; however no return was offered for the fourth quarter of 1986 which would include the critical CT Page 6734 month of December when the plaintiff claims his business was first affected. Further, these returns primarily show gross receipts and purchases subject to use tax and deductible items such as food products for human consumption. They do not reflect any business expenses, depreciation or net profit nor is it their purpose to do so. The plaintiff did not file income tax returns for the relevant years.
 Although we recognize that damages for lost profits may be difficult to prove with exactitude; see Conaway v. Prestia, supra, 494; Burr v. Lichtenheim, 190 Conn. 351, 360, 460 A.2d 1290 (1983); Humphrys v. Beach, 149 Conn. 14, 21, 175 A.2d 363 (1961); such damages are recoverable only to the extent that the evidence affords a sufficient basis for estimating their amount with reasonable certainly. Conaway v. Prestia, supra; Simone Corporation v. Connecticut Light and Power Co., 187 Conn. 487, 494-95, 446 A.2d 1071 (1982); Humphrys v. Beach, supra. Gargano v. Heyman, 203 Conn. 616, 621 (1987).
The plaintiff did not sustain his burden of proof as to actual damages for lost profits and the court can find no basis upon which to make such a determination.
The plaintiff claimed among other things that he paid for installation of two circuits for electric heaters in the amount of $392.50; this remained with the building. He also claimed his sign was removed and never returned to him. He said the sign cost him $350.
As to Counts One and Three the court awards the plaintiff the one sum of $742.50, the only amount which can be ascertained as to actual damages.
"In order to award punitive damages, evidence must reveal a reckless indifference to the right of others or an intentional and wanton violation of those rights." Collens v. New Canaan Water Co., 155 Conn. 477, 489,234 A.2d 825 (1967). Tillquist v. Ford Motor Credit Co., 714 F. Sup. 607,617 (D.Conn. 1989) The Court awards the plaintiff the sum of $1000 in punitive damages in Count Six and $500 in attorney's fees. The defendant by way of set-off claims that the sum of $3000 paid to the plaintiff as "relocation expenses" should be applied against any sums due and owing to the plaintiff. The court disagrees. The defendant, by way of counterclaim, claims use and occupancy for the months of March through June at the rate of $425 per month. However, in the stipulated agreement resolving the summary process action, the parties agreed that use and occupancy for June would be $362. This sum was deducted already from the initial $3000 settlement. Therefore, the counterclaim lies for three months use and occupancy, and accordingly, the defendant is awarded the sum of $1275.
Leheny, J. CT Page 6735