JOHN H. TIERNEY *v.* AMERICAN URBAN CORPORATION

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, Js.

Argued December 10, 1975—decision released February 17, 1976

*Frederick W. Danforth, Jr.,* for the appellant (defendant).

*Alan Neigher,* with whom was *Bernard Green,* for the appellee (plaintiff).

BOGDANSKI, J. This appeal arises from an action brought by the plaintiff against the defendant to recover a broker's commission. The jury returned a plaintiff's verdict, and, from the judgment rendered, the defendant has appealed, assigning error in the court's charge, in the overruling of claims of law, and in rulings on evidence.

The complaint, filed October 28, 1968, alleged that in September, 1964, the defendant engaged the plaintiff to negotiate and obtain the sale, lease or development of certain property owned by Joel P. and Helen Barnes; that from September, 1964, through July, 1965, the plaintiff assisted the defendant and enabled it to obtain a lease on that property; and that although the defendant had promised to pay the plaintiff the customary broker's commission, it has refused to do so.

In January, 1974, the court allowed the plaintiff to amend the complaint to add a second count in

quantum meruit, based upon the same factual matters as were alleged in the first count. The defendant demurred to the complaint on the ground that although the agreement referred to was oral, suit was not commenced within three years next from the accrual of the right of action, as required by General Statutes § 52-581. The demurrer was overruled. Subsequently, the defendant moved for summary judgment on the same ground, which motion was denied.

The plaintiff offered evidence to prove the following: The plaintiff became a licensed real estate broker in 1963. The defendant corporation was organized for the purpose of owning, developing and investing in real estate, and George E. Slye was its general manager, executive vice-president and secretary. Slye managed the corporation's day-to-day activities and was responsible for its real estate activities. In 1964, Slye informed the plaintiff that he was interested in property located at the I-91 interchange in Wallingford. In June, 1964, Slye and the plaintiff traveled to Wallingford to view certain property. Slye told the plaintiff that the defendant had a policy of paying a broker's commission when a broker could turn over to it property for commercial, industrial, or investment purposes. The plaintiff then advised Slye of the Barnes property, located in the area of the I-91 interchange in Wallingford and zoned industrial. The plaintiff thereafter furnished Slye and Fred R. Anibal, the defendant's engineer, with certain diagrams and other material relating to the Barnes property. At Slye's request, the plaintiff and Anibal met with Joel and Helen Barnes in September, 1964. In October and December, 1964, other meetings were held at which Slye, the plaintiff, and Joel and Helen

Barnes were present. Various possibilities for development of the Barnes property were discussed at those times. Thereafter, the plaintiff continued to work with Slye on other properties, and Slye kept him informed of the progress concerning development plans for the Barnes property. Prior to the signing of the Barnes lease, Slye asked if the plaintiff would take his commission in stock rather than cash. The plaintiff replied that he expected cash payment. On July 16, 1965, the defendant entered into a seventy-year lease with the Barneses concerning the subject property.

The defendant offered evidence to prove the following: The plaintiff contacted the defendant as a result of reading an article in a New Haven newspaper announcing the formation of the defendant corporation and talked with Slye, its executive vice-president. Slye never had actual or apparent authority to bind the defendant to pay a brokerage commission, and no report of any agreement with the plaintiff was ever made to its board of directors. In September, 1964, the plaintiff began a series of conversations with Joel and Helen Barnes, first on the subject of the purchase of land by the Barneses, and later, on the subject of the development of the Barnes property by the defendant. Neither a sale nor a lease was contemplated during those conversations. In January, 1965, the Barneses rejected proposals to develop their land, and from January, 1965, to July, 1965, direct negotiations between Slye and the Barneses resulted in the subject lease.

On those claims, the jury were required to determine whether the plaintiff had performed services on behalf of the defendant; whether Slye had agreed that the defendant would pay a commis-

sion to the plaintiff for the performance of those services; and whether Slye possessed the authority to bind the defendant.

The defendant first claims that the court erred in allowing the plaintiff to amend his complaint to include a count of quantum meruit more than five years after the original complaint was filed. "The allowance of an amendment to a complaint more than thirty days after the return day or fifteen days after a demurrer has been sustained rests in the discretion of the court." *Antonofsky* v. *Goldberg,* 144 Conn. 594, 597, 136 A.2d 338; *Benson* v. *Morey,* 129 Conn. 390, 391, 28 A.2d 843; Practice Book §§ 131, 132. The elements to be considered in determining whether the court abused its discretion in allowing an amendment include unreasonableness of the delay, fairness to opposing parties, and negligence of the party offering the amendment. *Antonofsky* v. *Goldberg,* supra; *Rusch* v. *Cox,* 130 Conn. 26, 32, 31 A.2d 457. In the present case, the quantum meruit count arose out of precisely the same facts as those which gave rise to the original breach of contract claim. The defendant was thus aware of the factual claims of the plaintiff long before the amendment was filed. Moreover, the defendant has failed to show how it was prejudiced by allowance of the amendment. The trial court did not abuse its discretion in granting the amendment.

The defendant next claims that because the agreement referred to in the complaint was oral, the three-year limitation prescribed in § 52-581[1] of the

---

[1] "[General Statutes] Sec. 52-581. ACTION ON ORAL CONTRACT TO BE BROUGHT WITHIN THREE YEARS. Except actions for a debt due by book or actions founded on proper subjects of book debt, or any cause of action governed by article 2 of title 42a, no action founded upon any express contract or agreement not reduced to writing, or

General Statutes was applicable rather than the six-year limitation in § 52-576,[2] and that the court therefore erred in overruling the demurrer and in denying the motion for summary judgment.

In *Hitchcock* v. *Union & New Haven Trust Co.*, 134 Conn. 246, 56 A.2d 655, Chief Justice Maltbie stated for a unanimous court (p. 259): "If §§ 6005 [now § 52-576] and 6010 [now § 52-581] are to be construed to make a harmonious body of law, it is necessary to restrict the latter, as was suggested in *Baker* v. *Lee* . . . [52 Conn. 145], to executory contracts. Section 6005 limits to six years actions on simple, that is parol, contracts; § 6010 limits to three years actions on contracts not reduced to or evidenced by a writing, that is, contracts resting in parol; and unless the latter is intended to apply only to executory contracts there would be different limitations established for actions of the same type, that is, those on parol contracts, a result which the legislature could not have intended." See also *Campbell* v. *Rockefeller*, 134 Conn. 585, 59 A.2d 524. It is undisputed that there was no written contract or memorandum concerning the plaintiff's employment. It is also undisputed that the lease between the Barneses and the defendant was executed on

---

of which some note or memorandum is not made in writing and signed by the party to be charged therewith or his agent, shall be brought but within three years next after the right of action accrues."

[2] "[General Statutes] Sec. 52-576. ACTIONS FOR ACCOUNT OR ON SIMPLE OR IMPLIED CONTRACTS. No action for an account, or for a debt due by book to balance book accounts, or on any simple or implied contract, or upon any contract in writing, shall be brought but within six years next after the right of action accrues; but persons legally incapable of bringing any such action at the accruing of the right of action may sue at any time within three years next after becoming legally capable of bringing such action. The provisions of this section shall not apply to actions upon judgments of any court of the United States or of any court of any state within the United States, or to any cause of action governed by article 2 of title 42a."

July 16, 1965, more than three years prior to the commencement of this action. When that lease was signed, "everything that was to have been done [under the alleged contract] by the plaintiff had been done, and all that remained was to pay him." *Campbell* v. *Rockefeller,* supra, 587. Since the plaintiff's performance was alleged to have been completely executed, § 52-576 established the applicable limitation period. In overruling the demurrer and in denying the motion for summary judgment, the court correctly applied the law as previously enunciated by this court.

Error is next directed to portions of the court's charge.[3] The defendant made the following written request to charge: "There is a further question of fact which you must resolve on the basis of the testimony before you whether the plaintiff was employed at all, and if so, whether he was employed solely to find a seller to the defendant or whether his authority was broader, encompassing transactions other than sale, such as the lease transaction which eventually resulted. If you find that he was employed and that he was employed for the purpose of effectuating a purchase between the defendant and the Barneses, the plaintiff did not meet the requirement that he be the procuring cause of the transaction because no purchase, in fact, resulted and the Barneses were never ready, able or willing to sell the property on the terms specified by the defendant." The defendant claims that in refusing that request, the court usurped the function of the

[3] Since no exceptions were taken to several portions of the charge which are now claimed to be erroneous, no error may be predicated upon them. Practice Book § 249; *Ferreira* v. *Storms,* 159 Conn. 259, 260–61, 268 A.2d 657; *Prystash* v. *Best Medium Publishing Co.,* 157 Conn. 507, 512, 254 A.2d 872; *Towhill* v. *Kane,* 147 Conn. 191, 193, 158 A.2d 251.

jury by removing from their consideration the questions of what the specific terms of the alleged contract were and whether the plaintiff complied with those terms.

Claims of error addressed to the charge are tested by the pleadings and by the evidence relevant to the claimed error as presented in narrative form (with appropriate reference to pages of the transcript) in the parties' briefs. *Galligan* v. *Blais,* 170 Conn. 73, 74, 364 A.2d 164.

The requested charge was not in conformity with the pleadings and evidence offered at the trial. The complaint alleged, and evidence was offered to prove, that the defendant engaged the plaintiff to negotiate and obtain the "sale, development or lease" of the Barnes property. Though the defendant did introduce evidence to show that Slye had no authority to enter into the alleged agreement on behalf of the defendant, there is nothing in the evidence suggesting that the plaintiff's alleged employment was confined solely to finding a seller to the defendant. Moreover, the court did charge the jury at length on the elements required to be found by them before the plaintiff could recover a commission: (1) that there was an agreement, and (2) that the plaintiff must have been the procuring cause of the transaction. The issues thus framed by the evidence and the pleadings were adequately covered by the charge, and it was not error for the court to refuse the requested charge. Cf. *Thibodeau* v. *Connecticut Co.,* 139 Conn. 9, 15, 89 A.2d 223.

The defendant further claims that the trial court erred in allowing the plaintiff to testify to conversations held with Slye concerning the alleged agreement. It argues that before such testimony could

be admitted, it should have first been shown that Slye was acting as the agent of the corporation, but that no foundation had been laid to show that Slye possessed either express or apparent authority to bind the defendant. The defendant contends that the only authority of Slye relied upon by the plaintiff was apparent authority, and that although the existence of apparent authority is to be determined by the acts and statements of the principal and not of the agent, the admission of Slye's alleged statements tended to "cloak" him with apparent authority in the eyes of the jury.

Prior to the testimony concerning Slye's conversations with the plaintiff, Joseph D. DiSesa, the president of the defendant corporation, testified that the purpose of the corporation was to own, develop and invest in real estate; that as president, he performed no active management functions on behalf of the corporation; and that Slye was the general manager of the corporation and its secretary and executive vice-president. In light of that testimony, the claim that no foundation had been laid for the admission of the plaintiff's conversations with Slye lacks merit. The general manager of a corporation has the implied and ostensible power to do those acts which are usual or necessary in the ordinary transaction of the corporation's business. 19 Am. Jur. 2d, Corporations, § 1174, and cases cited therein; cf. *Huber* v. *H. R. Douglas, Inc.*, 94 Conn. 167, 173, 108 A. 727. In view of the foundation laid by the testimony of the president of the defendant, the trial court properly admitted the testimony concerning the conversations between Slye and the plaintiff.

The defendant's other claimed errors in rulings on evidence cannot be considered on their merits,

either because they concern questions not raised at the trial; Practice Book § 652; or because the defendant has failed to present them in accordance with § 631A (c) (3) of the Practice Book.

There is no error.

In this opinion the other judges concurred.