[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from the adverse decision of commissioners appointed by a probate court. After hearing, the court finds the following facts to be largely undisputed.
The plaintiff, Carolyn Goodman, is the elder daughter of her decedent mother, Helen A. Mayer. The other daughter is Jeanne Savoy.
In January or February 1981, the plaintiff was residing in Oklahoma with her husband who was suffering from a terminal illness. She and her husband travelled to her mother's home in Roxbury, Connecticut to discuss whether the plaintiff should return to Connecticut. The plaintiff and the decedent reached an oral agreement providing that the plaintiff would reside in the decedent's home, would make certain refurbishments, and care for the decedent. In return, the decedent would convey the house to the plaintiff. The plaintiff also agreed to pay one-half the value of the residence to her sister. Jeanne Savoy, upon the death of the plaintiff's husband. The oral agreement was reached in the presence of the plaintiff's husband, now deceased, and her nephew. Roger Savoy.
The plaintiff's family sold their Oklahoma home and moved to Roxbury in July, 1981. They contracted for renovations, which were paid from the proceeds of the sale of the Oklahoma house. In September, 1981, the plaintiff and the decedent had an argument after which the plaintiff's family vacated the decedent's home at the request of the decedent. Shortly thereafter, the decedent changed her will, which had left one-half of her estate to each of her two daughters. The new will disinherited the plaintiff, leaving all of the decedent's estate to Jeanne Savoy.
The plaintiff claims monetary damages for the alleged breach of contract by her decedent mother.
The case presents the following questions of law. CT Page 4896
1. WAS THERE AN ORAL CONTRACT TO CONVEY THE SUBJECT PROPERTY?
There is really no serious disagreement on this issue. Although there are several legal impediments interposed to prevent the performance of the contract, the existence of the oral contract itself is beyond question.
The commissioners' diligent efforts to resolve this issue appeared flawed. They termed the decedent as the offeree rather than the offeror and fruitlessly sought acceptance on her part. Regardless, the terms of the contract were clear and both sides acted consistently with these terms. Subsequent actions of the parties, both overt and covert, do not alter the contract the parties created. They had the requisite meeting of the minds. The court is compelled to find that an oral contract was proved by clear and convincing proof.
2. DOES THE STATUTE OF LIMITATIONS BAR THIS CLAIM?
The basic purpose of the statute of limitations is promoting finality in the litigation process. Pintavalle v. Valkanos, 216 Conn. 412, 417,581 A.2d 1050 (1990). The statute of limitations also protects parties from having to defend against stale claims. Gurliacci v. Mayer, 218 Conn. 531,548, 590 A.2d 914 (1991).
The defendant has raised the statute of limitations as a defense. Specifically, the defendant claims that because the agreement between the parties was oral, the three-year limitation prescribed in General Statutes52-581 is applicable rather than the six-year limitation set forth in General Statutes 52-576. It is undisputed that the agreement between the parties was oral. General Statutes 52-576 limits actions on "simple" contracts, while General Statutes 52-581 limits to three years actions on oral contracts. However, in attempting to reconcile these two statutes to create a "harmonious body of law" our Supreme Court has distinguished the statutes by construing General Statutes 52-581, the three year statute of limitations, as applying only to executory contracts. Tierney v. American Urban Corp., 170 Conn. 243, 247-49, 365 A.2d 1153 (1975). Therefore, the statute of limitations governing a contract which a party has fully performed is the six-year statute, which is General Statutes52-576. See Tierney v. American Urban Corp., supra.
Additionally, "[i]n an action for breach of contract. . .the cause of action is complete at the time the breach of contract occurs, that is, when the injury has been inflicted." Kennedy v. Johns-Manville Sales Corp.135 Conn. 176, 180, 62 A.2d 771 (1948). This contract was not executory. CT Page 4897
3. IS THIS AGREEMENT INVALIDATED BY THE STATUTE OF FRAUDS?
The statute of frauds requires that an agreement to devise real estate be in writing in order to be enforceable. The Connecticut Statute of Frauds provides in pertinent part:
 (a) No civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party, to be charged: . . .(4) upon any agreement for the sale of real property or any interest concerning real property; . . ."
General Statutes 52-550.
Consequently, an oral agreement to devise land is in the nature of a contract for sale of land and as such is within the meaning of the provision of the statute of frauds requiring that every agreement or contract for sale be in writing. However, where an oral agreement for the sale of land is based on a valuable consideration, part performance may, take it out of the operation of the statute so as to permit its enforcement by a court of equity. See Ubysz v. DiPietro, 185 Conn. 47, 54, 440 A.2d 830 (1981).
In Ubysz v. DiPietro, supra, the court held that "acts on the part of the promisee may be sufficient to take a contract out of the statute if they are such as clearly refer to some contract in relation to the matter in dispute." Ubysz v. DiPietro, supra, 54. The court in its discussion of the doctrine of part performance stated:
 The doctrine of part performance arose from the necessity of preventing the statute against frauds from becoming an engine of fraud. Harmonie Club, Inc. v. Smirnow, 106 Conn. 243, 249, 137 A. 769 (1927). [T]he acts of part performance generally "must be such as are done by the party seeking to enforce the contract, and with the design of carrying the same into execution, and must also be done with the assent, express or implied, or knowledge of the other party, and be such acts as alter the relations of the parties." Andrew v. Babcock, 63 Conn. 109, 120, 26 A. 715
(1893). The acts must also be of such a character that they can be naturally and reasonably accounted for in no other way than by the existence of some contract in relation to the subject matter in dispute.
Ubysz v. DiPietro, supra, 54. CT Page 4898
Although there seems to be no Connecticut case law directly on point regarding the breach and part performance of an oral agreement to devise land it is held that because such an agreement is in the nature of a contract for the sale of land that where such agreement is based on valuable consideration, part performance should, as in the case of other oral contracts for the sale of land, takes it out of the operation of the statute so as to permit its enforcement by a court of equity.
Consistent with the general principles of the doctrine of part performance, performance relied on to take an oral agreement to devise land out of the statute must place the party who has performed in such a situation that it would be a fraud upon him if the agreement were not enforced. The part performance which will withdraw such a contract from the bar of the statute must consist of the following: (1) the party must have reasonably and substantially relied on the contract; and (2) so change his position that injustice can be avoided only by specific enforcement of the agreement. Dunham v. Dunham, 204 Conn. 303, 315, 528 A.2d 1123
(1987). Clearly then, mere declarations of intention to devise property are not sufficient to take a parol agreement to devise property out of the statute of frauds. Thus, where the promisee shows no substantial change for the worse in his position in consequence of the agreement, relief will be denied. See Dunham v. Dunham, supra.
In the case at bar, the plaintiff, at the very minimum partly performed. The plaintiff and her family packed their belongings, sold their home in Oklahoma and then moved to Connecticut. The plaintiff then invested the proceeds from the sale into her mother's house. Arguably, the plaintiff fully performed when she sold her home in Oklahoma and moved with her family into her mother's house in Roxbury, Connecticut.
 4. CAN ANY BAR OF THE STATUTE OF FRAUDS BE OVERCOME BY THE DOCTRINE OF PROMISSORY ESTOPPEL?
When the statute of frauds is claimed, "the doctrine of estoppel may be applied to prevent the use of that statute to accomplish fraud." DeLuca v. C.W. Blakeslee Sons, Inc., 174 Conn. 535, 544 (1978). Any claim of estoppel "`is predicated-on proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury.'" O'Sullivan v. Bergenty, 214 Conn. 641, 648, 573 A.2d 729 (1990).
In the present case the necessary elements for estoppel exist. Specifically, the act of pulling up stakes in Oklahoma as the plaintiff CT Page 4899 did and investing the capital from the sale of the Oklahoma property into improvements into her mother's house indicates that the plaintiff believed that the property would be hers. Thus, the plaintiff changed her position in reliance on the aforementioned transaction, thereby incurring some injury. O'Sullivan v. Bergenty, supra.
The court finds that there is an enforceable contract and there is no legal bar to the claim for damages.
The general rule in breach of contract cases is that the award of damages is designed to place the injured party, so far as can be done by money, in the same position as that which he would have been in had the contract been performed. Vespoli v. Pagliarulo, 212 Conn. 1, 3,560 A.2d 980 (1989).
It is axiomatic that the burden of proving damages is on the party claiming them. Gargano v. Heyman, 203 Conn. 616, 620, 525 A.2d 1343 (1987). When damages are claimed they are an essential element of the plaintiff's proof and must be proved with reasonable certainty. Simone Corporation v. Connecticut Light Power Co., 187 Conn. 487, 495, 446 A.2d 1071 (1982). Damages "are recoverable only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty." Simone Corporation v. Connecticut Light Power Co., supra, 494-95; Anderson v. Zweigbaum, 150 Conn. 478, 482, 191 A.2d 133 (1963).
One case in Connecticut has held that the measure of damages for breach of a contract to will specific property is the value of the property promised to be bequeathed or devised. Strakosch v. Connecticut Trust Safe Deposit Co., 96 Conn. 471 491, 114 A. 660 (1921).
In Strakosch v. Connecticut Trust Safe Deposition Co., supra, the plaintiff and the testator entered into an oral agreement whereby the plaintiff agreed to give herself in adoption to the testator, and the testator agreed to make a provision for her, in addition to the legacy of $20,000 already given her in his will, of such a value that from both sources she would, after his death, receive an income of $2,500 or $3,000 a year. Pursuant thereto the parties made a written agreement in accordance with the statutes of adoption. The agreement contained only such matters as technically and legally arose out of the adoption, and this agreement was approved by the court of probate according to law. The method of carrying out the provision for the plaintiff was not determined at the time of making the agreement, but it was understood that the testator was to have the option of buying an annuity, setting aside securities for the plaintiff, or setting up a trust fund in the plaintiff's favor. Thereafter, the testator discussed with various persons these methods, estimating that CT Page 4900 $35,000 was the proper sum to carry out his agreement, but the testator died suddenly without having made provisions for the plaintiff other than the bequest of $20,000 in his will.
The court in awarding damages to the plaintiff first determined that the bequest made in the will would yield an annual income of $1,000, and then by the use of annuity tables, determined the cost of an annuity which would yield the plaintiff $1,500 for her life, and awarded her a sum equal to such cost, with interest from the date of the disallowance of her claim. The court held that the measure of damages for breach of a contract to will specific property is the value of the property promised to be bequeathed or devised. Strakosch v. Connecticut Trust Safe Deposit Co., supra, 471. In affirming the lower court the court determined that this method accomplished exact and complete justice in giving the plaintiff the power to obtain the exact equivalent of what the contract had offered and of which by the breach the plaintiff had been deprived. Id.
However, in Anderson v. Zweigbaum, 150 Conn. 478, 191 A.2d 133 (1963), the court did not permit the promisee to recover damages, namely the testator's house, because the alleged oral agreement to devise land called for the conveyance of real estate which was unenforceable because of the statute of frauds. Anderson v. Zweigbaum, supra.
In Anderson v. Zweigbaum, supra, there was an alleged oral agreement whereby the deceased promised that if anything happened to him, he would leave his house to the plaintiff if she would move into the house and care for it and the deceased. The testator died without leaving the house to the plaintiff. The court awarded the plaintiff restitution, or the value of her services that were procured by the testator.
Anderson v. Zweigbaum, however, is distinguishable from the case at bar because in Anderson v. Zweigbaum, supra, the testator's statements could be considered a mere declaration of his intention to devise property which is not sufficient to take a parol agreement to devise property out of the statute of frauds. Moreover, the promisee did not establish a substantial change for the worse in her position in consequence of the agreement, and thus, relief was denied.
In addition, the acts on the part of the promisee were not sufficient to take a contract out of the statute because they did not as such clearly refer to some contract in relation to the matter in dispute. See Ubysz v. DiPietro, supra, 54.
Whereas in the case at bar, the plaintiff has established a substantial change for the worse in her position in consequence of the agreement. In CT Page 4901 addition, the acts on the part of the plaintiff were sufficient to take a contract out of the statute because they did as such clearly refer to some contract in relation to the matter in dispute. See Ubysz v. DiPietro, supra, 54. Specifically, the plaintiff sold her home in Oklahoma at a sacrifice, packed all of her and her family's belongings and moved to Roxbury, Connecticut. In addition, the plaintiff spent approximately $10,000 on construction work on the testator's house. Thus, the plaintiff has established a substantial change in her position for the worse and it is more likely than not that the plaintiff would not have uprooted from Oklahoma in the manner that she did had there not been an agreement by the testator to devise to the plaintiff the residence. See Harmonie Club, Inc. v. Smirnow, 106 Conn. 243, 249, 137 A. 769 (1927).
The court finds that the plaintiff is entitled as a matter of justice and law to damages to compensate her for the value of the property promised to be conveyed had the decedent not breached the contract. The court finds the measure of damages to be half the value of the property at the time of decedent's death on May 12, 1986. The court heard testimony from realtor Paul A. Friia from the Nocera Company. Mr. Friia testified that the fair market value of the subject property at the time of decedent's death was $215,000.00. Accordingly, the plaintiff is awarded damages in the amount of $107,500.00.
GILL, J.