[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (#126.5)
The plaintiff's eight count, second substituted complaint seeks compensatory and punitive damages and attorney's fees from the defendant Barnes Group, Inc. (Barnes)[1] on the grounds of breach of express contract (Counts One, Six and Eight); breach of the covenant of good faith and fair dealing (Count Two); quantum meruit and unjust enrichment (Counts Five and Seven); and, for violation of the Connecticut Unfair Trade Practices Act (CUTPA) (Counts Three and Four).
The defendant moves for summary judgment on numerous grounds more fully described below.
For the reasons that follow, partial summary judgment is granted as to Counts one, five, seven and eight, and denied as to the remainder of the plaintiff's claims. CT Page 1050
 I. FACTUAL AND PROCEDURAL HISTORY
The plaintiff, Thomas J. Messler, filed an eight-count complaint against the defendant, Barnes, seeking compensatory and punitive damages and attorney's fees.
The plaintiff alleges the following facts in his second substituted complaint. Barnes is a Delaware corporation which is authorized to do business in the state of Connecticut pursuant to General Statutes § 33-399 et seq., and is a seller and distributor of products used in the maintenance and repair of industrial and commercial facilities, equipment and vehicles. In March or April of 1983, the plaintiff and the defendant entered into a written sales agent agreement under which the plaintiff became an independent sales agent for the defendant. Under the terms of the agreement and subsequent bilateral amendments, the plaintiff was granted the exclusive right to call on all Pratt Whitney accounts in Connecticut. The agreement provided that the plaintiff would be paid "a commission, at the rates and upon the terms contained in the Sales Manual as amended from time to time" on all sales made by the plaintiff in his territory, which was limited to certain geographical portions and certain businesses in Connecticut. Other provisions of the agreement provided that the relationship between the plaintiff and the defendant was terminable at will, and that the agreement "shall be construed in accordance with the laws of the [s]tate of Ohio." (Sales Agent Agreement, Evidentiary Appendix to Memorandum of Law in Support of Defendant's Motion for Summary Judgment, Exhibit 2.)
The plaintiff successfully developed the defendant's business with some accounts of United Technologies Corporation (UTC) in Connecticut, including its Pratt Whitney accounts.[2] As a consequence of this success, the plaintiff established his own business and hired his own employees to help him in servicing the UTC accounts.
At the end of 1994, Paul Alexander, director of the defendant's custom service division, induced the plaintiff to transfer his sales from the core service division, with whom the plaintiff had been affiliated since 1983, to the custom service division. Alexander represented that the plaintiff would still represent the defendant and would have a primary role in the defendant's relationship with UTC, would be able to continue to operate his business as he had before, and would earn greater compensation. However, after the transfer, the plaintiff's role CT Page 1051 as the defendant's representative in charge of the UTC accounts diminished. The plaintiff was required to share all of the information he had amassed on UTC with Alexander and Bob Juliana, another employee of the defendant, including "all of the key, confidential sales information regarding UTC and Pratt Whitney that he had spent years as a sales agent acquiring and developing."
The plaintiff further alleged that Alexander and Juliana eventually, on behalf of the defendant, reached a new corporate agreement with UTC, the terms of which operated to "dramatically" alter the plaintiffs commission rate and other elements of his compensation. His role with respect to the UTC accounts was reduced. As a result of the change in compensation and his role with UTC, the plaintiff's overall compensation would be cut virtually in half. The plaintiff further claims, that as a result, he was also eventually forced to close the business he had established and to discontinue acting as a sales agent for the defendant under the terms of the new arrangement.
In count one, the plaintiff specifically claims that the defendant, acting through its employees, agents and representatives, breached its express contract with the plaintiff in several respects: (1) by imposing a commission structure that was not consistent with the terms of the defendant's sales manual, as the agreement between the plaintiff and defendant required; (2) by imposing a commission rate that was unreasonably low in consideration of the costs the plaintiff was forced to incur and the financial benefits that the defendant realized; (3) by forcing the plaintiff to divulge all of the sales information regarding the UTC accounts and taking over dealings with UTC; and (4) by violating the provision of the agreement which granted the plaintiff the exclusive right to call on those accounts listed in his territory description.
In count two, the plaintiff contends that the defendant breached an express covenant of good faith and fair dealing found in the defendant's sales manual and the agreement between the plaintiff and the defendant. The plaintiff further claims that the defendant breached its duty of good faith and fair dealing that was "inherent in and part of its principal-agent contract and relationship with" the plaintiff.
In counts three and four, the plaintiff claims that the defendant's conduct violated the Connecticut Unfair Trade CT Page 1052 Practices Act (CUTPA), General Statutes § 42-110a et seq.
Count five, sounding in quantum meruit, contends that the plaintiff performed substantial services beyond those required by the sales agreement between the parties, and that the defendant failed to compensate the plaintiff for the financial benefits it received as a result. In count six, the plaintiff asserts that the defendant's failure to compensate him for the sales he made on UTC accounts other than his Pratt Whitney accounts was in breach of an express representation that the defendant would pay him a two percent override commission on such sales. Count seven, claiming unjust enrichment, is based on the claim that the defendant should not be permitted to retain the financial benefits derived from the services the plaintiff performed for the defendant outside the scope of the written sales agreement. In count eight, the plaintiff claims that the defendant breached an oral agreement that a "charge-back" policy, which would have the effect of reducing the plaintiff's commissions, would not be applied to the plaintiff's sales to Pratt Whitney.
The defendant's motion for summary judgment claims that no genuine issue of material fact exists as to any of the eight counts of the complaint, and that the defendant is entitled to judgment as a matter of law on all eight counts. Each party filed several memoranda of law in support of its position, and oral argument was heard.
 II. DISCUSSION A. Applicable Law
With respect to the validity of choice-of-law provisions, Connecticut has adopted the analysis set forth in 1 Restatement (Second), Conflict of Laws § 187, p. 561 (1971). See Elgar v.Elgar, 238 Conn. 839, 850, 679 A.2d 937 (1996). Under the Restatement analysis, the parties' contractual choice of law will normally be upheld.[3] Neither party contests the validity of the choice-of-law provision in the sales agent agreement. Accordingly, Ohio law governs the construction of the sales agent agreement. The court will still apply Connecticut procedural law, as courts in Connecticut apply the procedural law of the forum state irrespective of the applicable body of substantive law. SeePaine Webber Jackson Curtis, Inc. v. Winters,22 Conn. App. 640, 650, 579 A.2d 545 (1990). Thus, the court will look to Connecticut law with respect to summary judgment procedures. CT Page 1053
 B. Standard for Summary Judgment
The procedure for summary judgment is governed by §§ 17-44 through 17-51 of the Rules of Practice. Section 17-49 states the standard the court must use in considering a motion for summary judgment: "The judgment sought shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment "is appropriate only if a fair and reasonable person could conclude only one way." Miller v. United TechnologiesCorp. , 233 Conn. 732, 751, 660 A.2d 810 (1995). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . ." Hertz Corp. v. Federal Insurance Co.,225 Conn. 374, 381, 713 A.2d 820 (1998). The party seeking summary judgment has the burden of establishing that summary judgment is warranted. See id.
 C. Count One: Breach of Express Contract
The defendant contends that it is entitled to judgment as a matter of law on count one because the claimed breaches are contrary to the clear language of the sales agent agreement.
The plaintiff first claims that the defendant breached the sales agent agreement by improperly changing the plaintiff's commission structure. At first, the plaintiff was paid according to the rates set forth in the sales manual, as the sales agent agreement provides. The plaintiff's affidavit states that the manual sets forth a graduated commission structure under which sales agents are entitled to commissions at varying rates for varying products, ranging from zero to forty percent. The plaintiff's commission was later changed to a flat rate of seven percent of net sales; however, the commission structure in the sales manual was never amended. The plaintiff claims that the defendant, pursuant to the sales agent agreement, was only permitted to change the plaintiff's commission after first making like changes in the sales manual. By changing the terms of his commission and making them inconsistent with the commission structure contained in the sales manual, the plaintiff claims, the defendant breached the sales agent agreement.
The defendant contends that the documents governing the CT Page 1054 relationship between it and the plaintiff expressly reserve to the defendant the right to change the commissions paid by it to its sales agent, and thus the claimed breach is contrary to the express terms of the sales agent agreement. In support of its position, the defendant, in its memorandum of law, tries to draw an analogy between the present case and Foss v. AmericanTelephone and Telegraph Co., 199 App.Div.2d 668, 605 N.Y.S.2d 143
(1993). The plaintiff in Foss was a former employee of the defendant who claimed that he had a right to a commission of $140,628.62 as a result of his role on a project, but was only paid $100,000. Foss claimed that he was entitled to such commission under the terms of a written compensation plan that was incorporated into his oral employment agreement. The plan upon which the plaintiff relied upon, however, contained a disclaimer granting the defendant the right to modify compensation at any time and for any reason. Accordingly, the court affirmed the trial court's grant of summary judgment in favor of the defendant: "To the extent plaintiff contends that his right to receive the entire $140,628.62 arises from an oral employment agreement, allegedly containing a promise that plaintiff would be paid a base salary — as he was — `plus incentive compensation payments . . . determined according to the applicable compensation system in place at the time', [the defendant's] unmistakably retained right to reduce or withhold commission payments, which was as much a part of that system as the specific provisions for calculating incentive commissions, is fatal to this claim as well." Id., 668.
The defendant in the present case contends that the plaintiff's claim for breach of contract must fail because the defendant, as in the Foss case, reserved the right to change the plaintiff's compensation. This assertion, however, ignores an important distinction between the sales agent agreement in the present case and the contract in Foss. The defendant in Foss
reserved the right to modify commission at any time and for any reason, without limitations. In the present action, the sales agent agreement provides that the defendant must pay the plaintiff the rates according to the sales manual. While it is true that the defendant reserved the right to amend said sales manual, it did not do so. I conclude therefore that there are genuine issues of material fact with regard to the plaintiff's claim that the defendant breached the agreement between the parties. Accordingly, the defendant is not entitled to judgment as a matter of law on count one in general. CT Page 1055
The defendant also asserts in its memoranda that the plaintiff is not entitled to recover future damages as a matter of law because the agreement between the plaintiff and the defendant was terminable at will.
Under Ohio law, a party can recover lost profits for breach of an agreement if: (1) the profits were in the contemplation of the parties at the time the contract was made; (2) the loss of profits is the probable result of the breach of the agreement; and (3) the profits are not remote and speculative and may be shown with reasonable certainty. See Charles R. Combs Trucking,Inc. v. International Harvester Co., 12 Ohio St.3d 241,466 N.E.2d 883, 887 (1984). With respect to the third prong of the test, the Ohio Supreme Court has stated: "In order for a plaintiff to recover lost profits in a breach of contract action, the amounts of lost profits, as well as their existence, must be demonstrated with reasonable certainty." AFG, Inc. v. Great LakesHeat Treating Co., 51 Ohio St.3d 177, 181, 555 N.E.2d 634 (1990).
I reason however, that in light of the terminable-at-will nature of the sales agent agreement between the plaintiff and the defendant, the plaintiff cannot demonstrate the existence or amount of lost profits with reasonable certainty. See, e.g.,AG-Chem Equipment Co. v. Hahn, Inc., 480 F.2d 482, 492 (8th Cir. 1973) (under Minnesota law, party cannot recover lost profits for breach of a contract that is terminable at will); DeMuesy v.Haimbaugh, Court of Appeals of Ohio, Docket No. 91AP-212 (December 31, 1991) (1991 WL 281411) (lost profits could not be proven with reasonable certainty where agreement upon which the alleged lost profits were based was terminable at will); see alsoSports Travel Marketing v. Chicago Cutlery Co., 811 F. Sup. 1372,1378 (D. Minn. 1993) ("a party is generally not entitled to lost future profits arising from a contract that is terminable at will"); Royal's Reconditioning Corp. v. Royal, 293 Ill. App.3d 1019,689 N.E.2d 237, 240 (1997) ("Numerous decisions from other jurisdictions concerning termination clauses in a variety of types of contracts also follow the reasoning that lost profits are limited to the amount that would have been earned during the contractual termination period"); Hentze v. Unverfehrt,237 Ill. App.3d 606, 604 N.E.2d 536, 540 (under Illinois law analogous to rule in Ohio, where agreement provided it could be terminated at will upon sixty days' notice, plaintiff could recover future damages only for sixty days).
The plaintiff argues that based on the holding in Charles R.CT Page 1056Combs Trucking, Inc. v. International Harvester Co., supra, the fact that the sales agent agreement is terminable at will is not fatal to his claim for lost profits. His reliance on CombsTrucking is misplaced. Combs Trucking, a hauling company, sued the defendant, a truck manufacturer, for breach of a sales agreement. The court held that the plaintiff could recover for lost profits in its trucking operations notwithstanding the fact that the contract it had with a certain gravel pit operator with whom it worked was terminable at will upon ten days' notice. The terms of the contract between the plaintiff and the gravel pit operator was only one item of evidence that should be considered, along with the gravel pit reserves, the contract term between the pit operator and the customers the plaintiff serviced, and the life of the new trucks, among other things. See Charles R. CombsTrucking, Inc. v. International Harvester Co., supra, 466 N.E.2d 887. The agreement between the plaintiff and the defendant inCombs Trucking, however, was not terminable at will. Thus, CombsTrucking is distinguishable on its fact from this case. Here, the sales agency agreement upon which the plaintiff is suing was terminable at will. The fact that the defendant could terminate its agreement with the plaintiff at any time and for any cause without penalty, renders it impossible for the plaintiff, as a matter of law, to demonstrate his lost profits with reasonable certainty.
Accordingly, I conclude that the defendant is entitled to partial summary judgment on count one on the issue of lost profits, effectively limiting the amount of damages the plaintiff can recover on count one. See U.S. Fidelity Guaranty Co. v.Sonitrol Services Corp. , Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 134267 (July 29, 1996, Arnold, J.) (granting partial summary judgment to limit damages recoverable by the plaintiff to $250 pursuant to a liquidated damages clause that the court found to be valid).
 D. Count Two: Covenants of Good Faith Fair Dealing
In count two, the plaintiff contends that the defendant breached both an express and an implied covenant of good faith and fair dealing. First, the plaintiff claims that the defendant breached an express covenant of good faith and fair dealing found in the defendant's sales manual and the sales agent agreement. In particular, the plaintiff alleges that the sales manual, which was incorporated into the contract between the parties, "contains a section entitled `Business Ethics'[4], the terms of which CT Page 1057 impose on the [d]efendant and its employees the obligation to act in good faith and fairly in all of [its] business dealings with the [p]laintiff." The defendant allegedly breached this express-covenant of good faith and fair dealing by using false representations to induce the plaintiff to transfer into its Custom Service Division so as to gain control over him and his relationship with Pratt Whitney and UTC, by forcing him to divulge sales information regarding his key accounts, and by taking over direct dealings with said customers.
The defendant argues that the statements in the sales manual are too unclear to constitute an enforceable promise, and as a result, it is entitled to judgment as a matter of law.
A contract may arise from provisions of an employment manual. In Ohio, an employment handbook only modifies the terms of an express contractual relationship where "accompanied by the paradigm elements essential to contract formation — i.e., offer, acceptance, and consideration. Implicit in the offer/acceptance requirement is the additional element that the parties have a meeting of the minds." DeKoning v. Flower MemorialHospital, 82 Ohio Misc.2d 20, 676 N.E.2d 614, 619 (C.P. 1996). "In the absence of mutual assent, a handbook is simply a unilateral statement of rules and policies that creates no obligations or rights." Seta v. Reading Rock, Inc., 100 Ohio App.3d 731,738, 654 N.E.2d 1061 (1995).
While the defendant's characterization of the provisions of the sales manual may be accurate, "[t]he determination of contractual intent involves questions of fact. . . ." Pond v.Devon Hotels, Ltd., 55 Ohio App.3d 268, 272, 563 N.E.2d 738
(1988) contract of employment. Noting the lower standard that applies at the summary judgment stage, the court concluded that issues of fact concerning the parties' contractual intent existed, and thus summary judgment was not appropriate. See id. In the present case, therefore, it is evident that the parties' contractual intent with respect to the statements in the policy manual is a question of fact, which is best left for resolution at trial. Accordingly, summary judgment may not be granted on the plaintiff's claim that the defendant breached an express covenant of good faith and fair dealing.
The plaintiff further claims in count two that the defendant, through its employees, breached its duty of good faith and fair dealing that was "inherent in and part of its principal-agent CT Page 1058 contract and relationship with" the plaintiff.
"Ohio law does not recognize the doctrine of good faith and fair dealing in employment contracts." Edelman v. Franklin Iron Metal Corp. , 87 Ohio App.3d 406, 410, 622 N.E.2d 411 (1993); see also Haynes v. Kirby Co., United States Court of Appeals, Docket No. 94-4276 (6th Cir. February 27, 1996). Ohio law does recognize, however, the doctrine of good faith and fair dealing in the principal-agent relationship, even where that relationship is terminable at will. See Davis Tatera, Inc. v. Gray-Syracuse,Inc., 796 F. Sup. 1078, 1086-87 (S.D. Ohio 1992). In Davis Tatera, the District Court was faced with a claim for breach of the covenant of good faith and fair dealing based on an agency agreement between the parties that was explicitly terminable at will. The court acknowledged that it was faced with a legal dilemma: "On the one hand, agency agreements without a definite period of time are deemed to be terminable at will. . . . On the other hand, the agency relationship is a fiduciary one, and as such, the parties to an agency agreement owe each other the obligation to act in good faith." (Citations omitted.) Id., 1086. After consideration, the court held that despite the at will rule, a duty of good faith and fair dealing exists in all agency relationships. See id., 1086-87.
The case of Tanksley Associates v. Willard Industries,Inc., 961 F. Sup. 203 (S.D. Ohio 1997) involved a similar issue. The plaintiffs in Tanksley Associates were former sales representatives of the defendant who claimed that their termination breached the defendant's duty of good faith and fair dealing. The defendant argued that the plaintiffs could not maintain an action for breach of the covenant of good faith and fair dealing because they were independent contractors. The court, however, stated that the plaintiffs' status as independent contractors was not dispositive, and that the more relevant inquiry was whether they were agents. See id., 207. The court recognized, further, that "an independent contractor may also be an agent," and that "this determination of the nature of an employment relationship is to be made on the basis of the particular facts of the case." Id., 207. Because a question of fact remained as to whether the plaintiff's employment relationship was also an agency relationship, the court denied the defendant's motion to dismiss. See id., 207-08.
In the present action, the plaintiff alleges that he and the defendant maintained a principal-agent relationship. The CT Page 1059 contract between the two parties was called a "sales agent agreement," and the plaintiff is referred to as a sales agent repeatedly therein. Therefore, there remains a genuine issue of material fact as to the nature of the relationship between the plaintiff and the defendant. As this question of fact is relevant to whether a covenant of good faith and fair dealing was implicit in the relationship between the parties in this action, the defendant has not demonstrated that it is entitled to judgment as a matter of law on this issue, and its motion for summary judgment must be denied as to count two.
 E. Counts Three Four: CUTPA
The plaintiff alleges, in counts three and four,[5] that the conduct of the defendant as outlined in counts one and two amounts to a violation of CUTPA, General Statutes § 42-110a et seq.
CUTPA declares that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." General Statutes §42-110b(a). The test for whether conduct violates CUTPA consists of three parts: "(1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [(competitors or other businessmen)]." (Alterations in original; internal quotation marks omitted.)Willow Springs Condominium Assn., Inc. v. Seventh BRT DevelopmentCorp. , supra, 245 Conn. 43; see also Thames River Recycling, Inc.v. Gallo, 50 Conn. App. 767, 785-86, ___ A.2d ___ (1998). "A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. . . . Thus a violation of CUTPA may be established by showing either an actual deceptive practice . . . or a practice amounting to a violation of public policy. . . . Furthermore, a party need not prove an intent to deceive to prevail under CUTPA." (Citations omitted; internal quotation marks omitted.)Cheshire Mortgage Service, Inc. v. Montes, 223 Conn. 80, 105-06,612 A.2d 1130 (1992); see also Thames River Recycling, Inc. v.Gallo, supra, 50 Conn. App. 786. CT Page 1060
The defendant advances several arguments in support of its motion for summary judgment as to the CUTPA counts. First, the defendant asserts that the choice-of-law provision in the sales agent agreement precludes the plaintiff's cause of action under CUTPA. This case is governed by Ohio law, the defendant claims, and CUTPA applies only to actions governed by Connecticut law.
In support of its position, the defendant cites TravelServices Network, Inc. v. Presidential Financial Corp. ,959 F. Sup. 135, 146 (D. Conn. 1997). Travel Services Network involved claims arising out of a secured lending agreement. The agreement between the parties specified that "[t]he substantive Laws of the State of Massachusetts shall govern the construction of this Agreement and the rights and remedies of the parties hereto." (Internal quotation marks omitted.) Id., 139 n. 1. Based on this choice-of-law provision, the District Court held that the plaintiff could not maintain a cause of action under CUTPA. See id., 139. The court specifically noted the breadth of the choice-of-law provision in question, stating: "A broadly-worded choice-of-law provision in a contract may govern not only interpretation of the contract in which it is contained, but also tort claims arising out of or relating to the contract." Id.
In the present case, however, the choice-of-law provision, which states that the agreement "shall be construed in accordance with" Ohio law, is much more limited. Several courts have held that similar narrowly-drawn choice-of-law provisions do not preclude causes of action under the laws of another state where such causes of action are not based in contract. See, e.g,Thompson Wallace of Memphis, Inc. v. Falconwood Corp. ,100 F.3d 429, 432-33 (5th Cir. 1996) (plaintiff's tort claims were not governed by choice-of-law provision that provided that the chosen law applied to the "agreement and its enforcement"); Krock v.Lipsay, 97 F.3d 640, 645 (2nd Cir. 1996) (provision stating that parties' agreement would be "governed by and construed in accordance with" Massachusetts law was too narrowly-drawn to apply to claim for fraudulent misrepresentation); Caton v. LeachCorp. , 896 F.2d 939, 942-43 (5th Cir. 1990) (choice-of-law provision stating that the agreement "shall be construed under" California law does not preclude causes of action for breach of the duty of good faith and fair dealing or quantum meruit under Texas law); cf. Turtur v. Rothschild Registry International,Inc., 26 F.3d 304, 309-10 (2nd Cir. 1994) (because choice-of-law provision that applied to claims "arising out of or relating to" CT Page 1061 the agreement in question was broadly worded, it covered plaintiff's tort claims as well as its contract claims).
In George S. May International Co. v. Cabinet Crafters, Inc., United States District Court, Docket No. H-88-28 (D. Conn. August 10, 1988) (14 Conn. L. Trib. no. 45, p. 33-34), the District Court held that a choice-of-law provision stating that the operative agreement would be "governed" by Illinois law did not apply to the defendant's tort counterclaims, which included a claim under CUTPA. See also McKeown Distributors, Inc. v.Gyp-Crete, Corp. , 618 F. Sup. 632, 643 n. 5 (D. Conn. 1985) (the parties' election to have the agreement "interpreted and governed by" Minnesota law does not preclude the plaintiff's CUTPA claim). But see O'Rourke Associates, Inc. v. Cooley Roofing Systems,Inc., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 341955 (September 26, 1990, Hennessey,J.).
While the relationship between the plaintiff and the defendant in the present action is contractually based, the plaintiff has alleged more than mere breaches of the sales agent agreement. In particular, the complaint alleges that the defendant's employees used false, misleading and deceptive representations in attempt to take over the plaintiff's relationship with Pratt Whitney and UTC. I find those decisions which hold that narrow choice-of-law provisions do not apply to non-contract claims persuasive. Based on the limited language of the choice-of-law provision in the parties' agreement, I conclude the plaintiff is not precluded from maintaining a cause of action under CUTPA based on the violations alleged.[6]
The defendant also contends that it is entitled to summary judgment on the CUTPA counts because the plaintiff has alleged no more than a mere breach of a contract. "A simple breach of contract, even if intentional, does not amount to a violation of [CUTPA]. A [claimant] must show substantial aggravating circumstances attending the breach to recover under the [a]ct. . . ." (Internal quotation marks omitted.) Emlee EquipmentLeasing Corp. v. Waterbury Transmission, Inc., 41 Conn. Sup. 575,580 (1991); see also Petro v. K-Mart Corp. , Superior Court, judicial district of Waterbury, Docket No. 123768 (February 24, 1998, West, J.) (acknowledging that a majority of Superior Court decisions follow this rule), and cases cited therein. Nonetheless, "the same facts that establish a breach of contract claim may be sufficient to establish a CUTPA violation. . . ." CT Page 1062Lester v. Resort Camplands International, Inc., 27 Conn. App. 59,71, 605 A.2d 550 (1992).
It is evident that the plaintiff in the present action has alleged facts beyond a mere breach of a contract sufficient to maintain a CUTPA claim. The plaintiff has not simply alleged that the defendant violated the sales agent agreement by failing to pay him commissions in accordance with the sales manual. The complaint, rather, includes allegations that the defendant, through its employees, made deceptive or misleading representations in an attempt to usurp the plaintiff's function as the sales agent responsible for the UTC and Pratt Whitney accounts. These allegations are apart from his breach of contract claim in count one. Misrepresentations are sufficient to form the basis for a CUTPA claim. See Abrams v. Riding High Dude Ranch, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 345046 (February 5, 1998, Skolnick, J.) ("[w]here a complaint includes allegations of affirmative misrepresentations, such as those present here, a CUTPA claim is permissible").
The defendant next argues that the conduct alleged simply does not fall within the ambit of CUTPA. This action, the defendant contends, does not involve consumer protection, but rather "a classic private contract dispute between an independent contractor . . . and his principal." (Defendant's Reply dated September 30, 1998, p. 15.) The defendant cites two cases in which it was held that a CUTPA action may not arise from conduct committed within the employer-employee relationship. See Quimbyv. Kimberly Clark Corp. , 28 Conn. App. 660, 670, 613 A.2d 838
(1992); Banerjee v. Robert, 641 F. Sup. 1093, 1108 (D. Conn. 1986). The defendant contends that in this case, too, the acts complained of do not come within the meaning of "trade or commerce."
The defendant's characterization of the relationship between it and the plaintiff is correct on one level. At the time the parties entered into the sales agent agreement, and for several years afterward, the parties' relationship was that of principal and agent, according to the complaint. As noted, however, in part II.D. of this opinion, supra, the principal-agent relationship is distinct from the employer-employee relationship in several respects. More importantly, the complaint alleges that when it initiated a program to convert its product distribution system from one involving independent sales agents to one based on employee-salespersons, the defendant actually became a real or CT Page 1063 potential competitor of the plaintiff. It is clear that such conduct falls within the ambit of CUTPA's definition of "trade and commerce." See 1 R. Langer, J. Morgan D. Belt, The Connecticut Unfair Trade Practices Act (1994) § 3.6, p. 62 (CUTPA is generally applicable to competitors).
Finally, the defendant asserts that a CUTPA claim may not be based on a single event or even isolated instances of unfair acts or practices. The Superior Court is divided as to whether a CUTPA claim may be based on single or isolated events. The majority of these cases have held that a CUTPA claim may be based on a single transaction. See Gustafson v. Young, Superior Court, judicial district of New London at Norwich, Docket No. 105199 (July 11, 1994, Teller, J.). Moreover, "[a] considerable number of appellate cases, while not focusing on this precise point, have recognized the validity of a CUTPA claim arising out of a single transaction." Id. Therefore, the defendant has not established that a single transaction cannot form the basis for a CUTPA action as a matter of law. Accordingly, for the above reasons, the defendant's motion for summary judgment must be denied with respect to counts three and four.
 F. Counts Five Seven: Quantum Meruit Unjust Enrichment
Count five of the complaint deals with the plaintiff's development of business with UTC. The count alleges that the plaintiff was encouraged to develop business for the defendant with divisions of UTC other than the Pratt Whitney accounts assigned to him. Pursuant to said requests, the plaintiff acquired additional UTC accounts, both within and without Connecticut. The plaintiff claims that he rendered these additional services with the expectation of receiving additional compensation from the defendant. The defendant was aware of these additional services, benefited financially therefrom, and knew or should have known that the plaintiff expected to be given additional compensation. The plaintiff claims in count five that the defendant owes him the reasonable value of these additional services he performed over the term of the parties' relationship, which lasted approximately twelve and one-half years. Similarly, in count seven, the plaintiff claims he is entitled to payment for these services under the theory of unjust enrichment.
The defendant first contends that it is entitled to summary judgment on these counts because, under Ohio law, a plaintiff may not maintain an action on a quasi-contract theory where the CT Page 1064 plaintiff has also sued on an express contract that covers the same subject. See Randolph v. New England Mutual Life Ins. Co.,526 F.2d 1383, 1387 (6th Cir. 1975); Davis Tatera, Inc. v.Gray-Syracuse, Inc., supra, 796 F. Sup. 1078; Weiper v. W.A. Hill Associates, 104 Ohio App.3d 250, 767,661 N.E.2d 796 (1995).
In the cases cited by the defendant, the claimants were attempting to recover in quasi-contract the same damages they were trying to recover in separate breach of contract counts. For example, in Davis Tatera, the plaintiff sales agent claimed that the defendant breached its contract with the plaintiff by unilaterally decreasing the commission rate from five percent to two and one-half percent. The plaintiff also claimed it was entitled to the unpaid commission under the theories of unjust enrichment and quantum meruit. Because the plaintiff's claims for unjust enrichment and quantum meruit sought damages for commissions that were the subject of the parties' contract, the court held that the plaintiff's quasi-contract claims were barred as a matter of law. See Davis Tatera, Inc. v. Gray-Syracuse,Inc., supra, 796 F. Sup. 1086.
In the present action, the terms of the sales agent agreement set forth the extent of the plaintiff's territory in an attached "territory description." The territory description, which was amended at least twice, included, at its broadest, Litchfield and Hartford counties, plus all Pratt Whitney accounts within the state of Connecticut. The commission provision of the sales agent agreement provides that the plaintiff would be paid commission "on all sales made by the [plaintiff] to customers included within the Territory Description." The compensation claimed by the plaintiff in counts five and seven, however, relates to sales not included in the territory description. I conclude, therefore, that the plaintiff's claims in counts five and seven are not the subject of the plaintiff's breach of express contract claims. Accordingly, the plaintiff's claims for quantum meruit and unjust enrichment are not barred as a matter of law by the plaintiff's breach of contract claims.
The defendant also asserts that the plaintiff's claims in counts five and seven are barred by the applicable statute of limitations. "A statute of limitations is generally considered to be procedural, especially where the statute contains only a limitation as to time with respect to a right of action and does not itself create the right of action." (Internal quotation marks CT Page 1065 omitted.) Champagne v. Raybestos-Manhattan, Inc., 212 Conn. 509,525, 562 A.2d 1100 (1989). Accordingly, the law of the forum applies. See Somohano v. Somohano, 29 Conn. App. 392, 393,615 A.2d 181 (1992). Furthermore, as the plaintiff in the present case seeks money damages rather than equitable relief in counts five and seven, the court must apply the statute of limitations as set forth in § 52-576, rather than the doctrine of laches. See Golden v. Ho, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 517502 (December 13, 1993, Corradino, J.).
General Statutes § 52-576 provides, in pertinent part: "No action for an account, or on any simple or implied contract, or on any contract in writing, shall be brought but within six years after the right of action accrues. . . . "Applied to a cause of action, the term to accrue means to arrive; to commence; to come into existence; to become a present enforceable demand."Prudential Property Casualty Ins. Co. v. Perez-Henderson,49 Conn. App. 653, 658, 714 A.2d 1281 (1998), cert. denied,247 Conn. 917, ___ A.2d ___ (1998). "While the statute of limitations normally begins to run immediately upon the accrual of the cause of action, some difficulty may arise in determining when the cause or right of action is considered as having accrued. The true test is to establish the time when the plaintiff first could have successfully maintained his action." (Internal quotation marks omitted.) Engelman v. Connecticut General Life Ins. Co.,240 Conn. 287, 294 n. 7, 690 A.2d 882 (1997).
"In Connecticut, an action is commenced on the date of service of the writ upon the defendant. . . ." (Internal quotation marks omitted.) Hillman v. Greenwich, 217 Conn. 520,527, 587 A.2d 99 (1991). In the present action, the sheriff's return indicates that service occurred on April 19, 1996. Accordingly, the statute of limitations should operate to bar any of the plaintiff's claims which accrued before April 19, 1990. The complaint alleges that the conduct in question occurred over the term of the parties' relationship, approximately twelve and one-half years. Therefore, partial summary judgment is rendered in favor of the defendant on counts five and seven, but only as to the additional services rendered by the plaintiff to the defendant prior to April 19, 1990. See Niper v. Johnson, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 256309 (February 28, 1992, Lewis, J.) (granting summary judgment only as to one paragraph of the complaint that contained a time-barred claim). CT Page 1066
 G. Counts Six Eight: Breaches of Express Contracts
The defendant contends that counts six and eight are also barred by the relevant statute of limitations. Count six concerns an alleged oral agreement under which the defendant agreed to pay the plaintiff a two percent override commission on all sales made by the defendant to UTC accounts other than the plaintiff's own Pratt Whitney accounts. "The statute of limitations governing a contract which a party has fully performed is § 52-576."Cacace v. Morcaldi, 37 Conn. Sup. 735, 741, 435 A.2d 1035 (App. 1981), citing Tierney v. American Urban Corp. , 170 Conn. 243,249, 365 A.2d 1153 (1976). Thus, § 52-576 operates to bar the plaintiff's claim in count six to the extent that such claim accrued prior to April 19, 1990.
While the complaint is not clear as to when the alleged oral contract was entered into, the plaintiff states in his Affidavit dated October 8, 1998 that the oral agreement arose in discussions that occurred on August 9, 1990. (See Affidavit of Thomas J. Messler dated October 8, 1998, ¶ 9.) The plaintiff allegedly performed the services pursuant to the oral agreement from August 9, 1990 until some time in 1995. The defendant has offered no evidence to the contrary. Accordingly, the plaintiff's cause of action on the breach of the alleged the oral agreement did not accrue until after April 19, 1990. Therefore, that the defendant's motion for summary judgment fails and is denied as to count six.
Count eight concerns another oral promise allegedly made by the defendant that it would not apply its charge-back policy to the plaintiff. The record is not clear as to precisely when the alleged oral promise arose. Accordingly, the defendant is entitled to partial summary judgment on count eight for any charge-backs imposed before April 19, 1990, for the reasons set forth in part II.F., supra.
 CONCLUSION
In sum, the defendant's motion is granted in part as to count one, so as to dispose of the issue of lost profits, and in part as to counts five, seven and eight, so as to dispose of the portions of those claims that are time-barred. The defendant's motion for summary judgment is denied as to the remaining portions of said counts and as to counts two, three, four and CT Page 1067 six.
Teller, J.